Louisa M. Lent, Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

120 467
d163 113

The test of contributory negligence or want of due care is not always found in the failure to exercise the best judgment or use the wisest precautions; the influences which ordinarily govern human action are to be considered, and what would, under some circumstances, be a want of reasonable care, may not be such under others.

In an action to recover damages for injuries received by plaintiff through the alleged negligence of defendant, it appeared that the plaintiff, accompanied by two gentlemen, took a train on defendant's road in the evening, just after dusk; they passed through the cars to the rear, finding all the seats occupied. They were informed by the conductor that another car would be put on, and, at his suggestion, went to the front platform of the forward car, from which the engine had been detached. As the platform was full plaintiff stepped just inside the car. An empty car was backed down and when it came in contact with the front car, the passengers on the platform passed into the empty car, one of plaintiff's party with them, who called out to her to come along, and plaintiff's testimony was to the effect that as the cars touched the conductor cried out, "all aboard." The draw-heads of the two cars, when they came together, failed to catch, and in consequence of which the cars receded several feet from each other, and when plaintiff attempted to pass forward, not perceiving the opening, she fell between the cars and was injured. So far as appeared there was no defect in the coupling apparatus, or in the engine, or train, or in their equipments in any respect. Defendant's employes were in a position to see if the coupling was complete. The question of negligence was submitted to the jury. *Held*, no error; that the call of the conductor might be considered by the jury, as giving the passengers to understand, that unless they saw something to the contrary, the car added to the train was ready, and it was safe for them to enter, also as an invitation for them to do so, and, if given prematurely, justified an imputation of negligence against defendant; and that the question of contributory negligence was one of fact for the jury.

Reported below, 22 J. & S. 317.

(Argued April 24, 1890; decided June 3, 1890.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 19, 1887, which overruled defendant's exceptions and directed a judgment in favor of plaintiff entered upon a ver-

dict, and affirmed an order denying a motion to set aside the verdict and grant a new trial.

This was an action to recover damages for personal injuries alleged to have been caused by defendant's negligence.

The material facts are stated in the opinion.

*Frank Loomis* for appellant. The court erred in refusing to charge the jury, at defendant's request, that the plaintiff was bound to wait in the car, where she was in a safe place, until the coupling was complete. (*Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136; *Dugan* v. *C. T. Co.*, 56 id. 1; *Loftus* v. *U. F. Co.*, 84 id. 455.) The submission of the case to the jury was error, and the court should have granted the defendant's motion to dismiss the complaint or direct a verdict for the defendant. (*Hanahan* v. *M. R. Co.*, 53 Hun, 420; *Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136; *Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 id. 133; *McKeever* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 667.)

*Aaron Pennington Whitehead* for respondent. Plaintiff was not guilty of contributory negligence. (*Bernhard* v. *R., etc., R. R. Co.*, 1 Abb. Ct. App. Dec. 134; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 455; *Thurber* v. *H., etc., R. R. Co.*, 60 id. 331; *Dickens* v. *N. Y. C. R. R. Co.*, 1 Keyes, 27; *McClain* v. *B. C. R. R. Co.*, 116 N. Y. 459; *Pendril* v. *S. A. R. R. Co.*, 2 J. & S. 486; *Davis* v. *N. Y. C. R. R. Co.*, 47 N. Y. 400; *McCall* v. *N. Y. C. R. R. Co.*, 54 id. 643; *Steves* v. *O., etc., R. R. Co.*, 18 id. 423; *Gorton* v. *E. R. Co.*, 45 id. 664; *McIntyre* v. *N. Y. C. R. R. Co.*, 37 id. 288; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 50; *Tousey* v. *Roberts*, 114 id. 312; *McGuire* v. *Spence*, 91 id. 305, 306; *Driscoll* v. *Mayor*, 11 Hun, 102; *Newson* v. *N. Y. C. R. R. Co.*, 29 id. 390; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Abb. Ct. App. Dec. 462; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 246; *Ernst* v. *H. R. R. Co.*, 35 id. 28.)

Bradley, J. The plaintiff suffered personal injuries which she alleges were occasioned by the negligence of the defendant.

They were caused by her fall when she was proceeding to step from the platform of one car onto that of the next car preceding it, through an opening between them which she did not observe. The facts were, that the plaintiff, with her brother Mr. Russell, and her brother-in-law Mr. Gilbert, were at the Peekskill depot to take the train due there 7.46 P. M., for New York, on July 6, 1884; that the train was late, and when it arrived, the plaintiff, with her party, got onto it and proceeded through the cars to the rear, and finding all the seats occupied they, upon the information of the conductor that another car would be put onto the train, and, at his suggestion, alighted from the rear of the train and proceeded toward the forward end of it. The engine, with a section of the train, had then been severed from the rear portion and proceeded east, thence back on to a switch, to there take on an empty car. The plaintiff, with Russell and Gilbert, got onto the front platform of the most easterly car of the stationary portion of the train to await the connection with it of the empty car which, soon after, was backed up, and when they came together, persons standing on the platform passed from it into the empty car, Gilbert with them. He called to the plaintiff to come into it, which she undertook to do, and when proceeding to step from the platform of the one to that of the other car, she fell between them onto the track, and received the injury complained of. The open space between the platforms of the two cars was occasioned by the failure, when they came together, of the draw-heads to catch and complete the coupling, in consequence of which the cars receded, making an opening between their platforms of several feet. The coupling apparatus was automatical, such as is in general use and, so far as appears, well approved. There was no defect in it or in the engine or train in their equipment in any respect. It appears that the coupling process requires for its completion a certain force in making the contact, that it is not always accomplished at the first attempt, and that it is more difficult to do it when, as was in this instance, the train is on a curve of the road. The failure to make the coupling when

the draw-heads first were brought in contact was not, nor was the gap between them, which followed it, occasioned by any negligence of the defendant. The question, therefore, arises whether the plaintiff's injury was caused by any fault of its employes. The relation of passenger and carrier between the plaintiff and defendant commenced when she went onto its premises and purchased her ticket for the purpose of taking the train, and the defendant assumed the duty of reasonable care for her protection while proceeding to take the train. This, however, gave to her no right to enter a car before it was attached to the train. The plaintiff evidently supposed when the cars came together that they were coupled, and the empty one ready to receive passengers. This was the appearance which the shock of the contact gave. At that time the adjacent platform of the next car back of it was fully occupied with passengers ready to enter. The plaintiff was in the rear of them, and standing just inside the car. The defendant's employes were in a situation to see whether the coupling was complete, and with them was the duty, if it was not so, of informing the passengers and requesting or directing them to wait until it was done. This, those employes testify they did do by distinctly telling them to keep back, to stand back off the platform, and that this was repeated. If this were so, and nothing further occurred to induce the passengers to go forward when they did, and when the plaintiff sought to do so, it would be difficult to find any support for the charge of negligence against the defendant. But there is evidence tending to prove that at the moment the cars came together, the conductor halloed "all aboard," and that the plaintiff, and those with her, heard it; and that, thereupon, the passengers proceeded from the platform of the car on which she was, to pass into that ahead of it, and she followed. The evidence of such announcement of the conductor was contradicted by his evidence and that of the brakemen there. This question was one of fact for the jury, and finding, as it may now be assumed they did, that the conductor, simultaneously with the coming together of the cars, called out as before mentioned, the conclusion of the jury was

permitted that it enabled the passengers to understand (unless they saw something to the contrary) that the car was ready for them to enter it. And it may have been treated as an invitation to do so, and as it was given prematurely, or before it was entirely safe to do so, it was the fault of the defendant's employe, which justified the imputation of negligence against the defendant. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47; 59 id. 361; 68 id. 124; *Maher* v. *C. P. N. & E. R. R. R. Co.*, 67 id. 55.) While such remark of the conductor may have been intended for those not on the train desiring to take it, it cannot, in view of the then circumstances, necessarily be treated as exclusively applicable to them. There was a large number of passengers in the car where the plaintiff was, and on its platform, waiting for the empty car, to obtain a seat in it. This was known to the conductor, and they, as well as those standing at the depot were at liberty to understand that the call was intended for all who wished to enter it and procure a seat there. And this state of facts was entitled to consideration on the question of the contributory negligence of the plaintiff so far as related to her movement from the position in which she then was, to get into the other car. When she heard this call of the conductor, she was warranted in supposing that the condition was such as to enable her to safely pass into the other car for which she had been waiting to obtain a seat. In proceeding to do so, she was not necessarily chargeable with negligence. (*Bucher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 128.) But her duty was to exercise care in going forward. If she saw the gap between the platforms, it was negligence for her to proceed, and if she did not see the opening, the question is whether she, as matter of law, was chargeable with the want of care, which she was called upon to exercise. It may be assumed that she did not see the difficulty. She says that she was looking at her brother-in-law, who had called for her to come into the car; and that, as she was "about to take the step, the car separated;" that was all she remembered. It was just after dusk in the evening. The situation may not have been plainly visible. There had been

a crowd of passengers on the car platform. They had gone into the other car and were proceeding to do so, and there were many to get on board at that station. The plaintiff was anxiously hastening, apprehensive that otherwise she might fail to get a seat. It is very likely that she neither appre= hended danger from the cause which produced it, or looked to see whether the platforms were so united as to permit passage from one to the other. She probably assumed, from what she had heard from the conductor and seen in the movement of the passengers, that the way for passage was as safe as usual when cars are coupled. The plaintiff had on occasions before taken passage on trains running on the time of this one, and had the opportunity of seeing that the platforms of connected cars were not separated by a space at all dangerous to passage. In fact it was about one inch in width when the cars were coupled. Mr. Russell testified that as the plaintiff stepped forward the cars separated and she went down between them. There was other evidence that they separated immediately after the contact. At all events, her attention was not called to it, and she says no warning to keep back was heard by her, and her brother and brother-in-law say they heard none. The evidence that warning was given came from the employes whose duty it was to give it. The severance of the cars after they came together, and the movement of the plaintiff with others to cross into the other car, evidently occupied but a very short space of time. The plaintiff's excuse for proceeding as she did was in the announcement "all aboard," which must now be assumed to have been given by an employe of the defendant, It may be inferred that, relying upon that and seeing others pass, she supposed that it could be done in safety. And the jury were permitted to conclude that the plaintiff relied upon those evidences that the cars were coupled together, and was justified in proceeding as she did to pass from the one into the other car without any apprehension of danger from the cause which produced it. (*Tousey* v. *Roberts*, 114 N. Y. 312; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 241.)

The test of contributory negligence or want of due care is not always found in the failure to exercise the best judgment or to use the wisest precaution. Some allowance may be made for the influences which ordinarily govern human action, and what would under some circumstances be a want of reasonable care might not be such under others. (*McIntyre* v. *N. Y. C. R. R. Co.*, 37 N. Y. 287; *Lowery* v. *M. R. Co.*, 99 id. 158; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 652.)

This question of negligence in the present case was for the jury, and, therefore, the motion to dismiss the complaint was properly denied.

And there was no error in the refusal of the court to charge, as requested, that the plaintiff was bound to wait in the car, where she was in a safe place, until the coupling was complete. The consideration of this proposition is embraced in what has already been said. The exercise of due care required her to wait until she was induced by what an employe announced, and by it was permitted to suppose and did believe that the cars were so coupled. The court had charged the jury quite fully upon that subject, and the question was submitted to them whether the plaintiff was chargeable in any respect with negligence in proceeding when and as she did, to pass from the car in which she was to the other one, and they were instructed that if the plaintiff was not entirely free from negligence, she could not recover. The case was a close one, but the facts essential to a recovery by the plaintiff were not without evidence for their support. There seems to have been no error in any of the rulings to which exceptions were taken.

The judgment should be affirmed.

All concur.

Judgment affirmed.