LEARNED, P. J., and LANDON, J., concurred.

Judgment and conviction reversed.

62　137<br>131a　447

## LYDIA A. GLAZIER, RESPONDENT, v. THE TOWN OF HEBRON, APPELLANT.

*Negligence — defective highway — two proximate causes of an accident — its peculiar nature is no defense — a town may be liable although the commissioner of highways is not.*

In an action brought against a town by one who was injured, as alleged, by reason of the defective condition of a highway, it appeared that the plaintiff was driving along a highway, which was seventeen feet wide and ran along a pond which was more than eight feet below it; that at the point in question there was no fence or guard between the highway and the pond; that the highway was deeply drifted with snow; that a sleigh, upon which were barrels of coal, driven by two boys, was approaching from the opposite direction; that it stopped; that the boys said they would be along in a minute; that the plaintiff waited; that as they reached her and turned out to pass a barrel slid off their sleigh and frightened the plaintiff's horse, which backed off the bank into the pond.

*Held*, that as two proximate causes, the fright of the horse and the failure to furnish a fence, might be said to have contributed to the accident, the town, which was responsible for the latter, was liable.

That as the court left it to the jury to say whether the plaintiff acted as a person of ordinary prudence should have done, it was not error to refuse to charge that if the boys stopped outside of the road where it was safe to pass, and she saw it, it was her duty to have passed at that place.

That whether it was the duty of the town to erect a guard at the point was properly submitted to the jury.

That the fact that the accident was of a peculiar nature was not material.

That it was not error to decline to charge, in effect, that if the action could not have been maintained as against the commissioner of highways, it could not be as against the town.

HUN — VOL. LXII　18

That since the passage of chapter 701, Laws of 1881, towns may be liable whether the commissioner of highways is or is not, *e. g.,* when they neglect to repair defects in highways, of which they know or should have known, and to repair which they have or can obtain the necessary funds.

APPEAL by the defendant, the Town of Hebron, from a judgment, entered in the office of the clerk of the county of Washington on the 14th day of July, 1890, upon a verdict for the plaintiff for $2,000, after a trial at the Washington County Circuit before the court and a jury; and also from an order, entered in said clerk's office on the 22d day of May, 1890, denying a motion, made by the defendant on the minutes of the court, to set aside the verdict and for a new trial.

*Edgar Hull, J. S. L'Amoreaux, C. H. Sturges* and *L. H. Northup,* for the appellant.

*J. M. Whitman* and *Potter & Lillie,* for the respondent.

LEARNED P. J.:

A highway in Hebron runs for some eighteen rods by the southerly side of Reed's pond, and from the road there is a steep descent to the pond. For much of the distance there are trees and shrubs along the bank. On the twenty-fourth of March the plaintiff was driving along this road, and had reached a place where, for about twelve feet, there were no trees along the bank. At this point she saw, at a distance of some thirty feet, an approaching vehicle. It consisted of two bob-sleighs with some boards laid across, on which were two barrels of coal, and it was drawn by one horse. Two boys were in charge of it. As she saw them they were at the horse's head arranging the harness. She stopped, and they said they would be along in a minute. She said "All right," and waited for them. Just as the boys with their horse and sleigh reached the plaintiff and turned out to pass, one of the barrels slid off against, or in front of, plaintiff's horse. He became frightened and backed her cutter down the bank, and she with the horse and cutter fell into the pond, breaking through the ice. The plaintiff was injured by the accident and the consequent exposure, and sues for damages.

There is some disagreement between her statement and that of the boys. They say that they called to her to come on, while they stood.

But this is immaterial. The jury probably accepted her statement, and at any rate there is no proof that she did not exercise her best judgment as to the place where the two vehicles would pass.

The great snow storm called "the blizzard" occurred about ten days before. Since that the snow had melted and frozen so that the snow or ice upon the roadway was slanting. Thus, probably, it happened that, as the boys turned out on the upper side, their sleigh tipped enough to cause the barrel to slide off. The plaintiff was on the northerly side of the road, that nearest to the pond. There was no fence or other protection on the side of the road next to the pond. From the road-bed, which was about seventeen feet wide, there was a slope downwards of about eight feet, with a drop of about four feet, and from that a nearly vertical drop of about four feet to the water. It can readily be seen that as the plaintiff's cutter was necessarily near to the edge of the bank, her horse in backing would, probably, soon get the rear of the cutter over the edge of the bank, and then the result which followed would be almost inevitable.

The first point urged by defendant is, that the absence of a guard or rail at the bank was not the proximate cause of the injury; that such cause was the falling of the barrel of coal.

The object of having a rail or guard put up at the side of a road in such a place is, of course, to prevent travelers and vehicles from falling down the bank. It is not simply to indicate that there is a bank at the place. It is evident that when, in daylight, a person is driving a horse, not disturbed by any exciting cause, along such a place, there is hardly any danger, even if there be no rail or barrier at the side. The rail then is especially to protect travelers when some fright makes a horse deviate from the ordinary track, or when darkness prevents a traveler from seeing, or when some unexpected cause puts him in danger. Experience has shown that unforeseen causes may expose the traveler to the danger of being thrown down such a bank. Hence it is proper to erect a barrier. And whether or not we call the cause which may produce such danger proximate, still that is the kind of danger against which those who have charge of the road should guard by the means above mentioned. The rail is put up because it is known that such danger will occasionally happen. To neglect to put it up is culpable.

Of course, all the surrounding circumstances contribute to produce any result under consideration. Hence it is not always easy to assert any one to be the sole cause. If the pond had not been there, the plaintiff would not have been wet. If she had stayed at home, she would not have been hurt. If the horse had not been frightened, he probably would not have backed, and so on.

There is some conflict in the cases in different States on questions similar to the present. But it seems to us of little use to discuss them, when the highest court in our State has laid down a rule which must be controlling with us. In *Ring* v. *Cohoes* (77 N. Y., 83) the Court of Appeals, after referring to the decision of other States, say : " When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate, the one being a culpable neglect in the highway, and the other some occurrence for which neither party is responsible, the municipality is liable, provided the injury would not have been sustained but for such defect." That language was applied to a case where the plaintiff's horse became frightened, without his fault, and ran into a hydrant. There was also a pile of ashes which obstructed the street. The referee had found that both the ashes and the hydrant were culpable defects. The Court of Appeals held that the hydrant was not a defect, but that the ashes might have been. The two causes which the court spoke of as combining to produce the injury were the fright of the horse and the defect in the street. These they spoke of as," in their nature, proximate." That case is quite analogous to the present. For here are the two causes, the fright of the horse and the defect in the highway, which may be called proximate ; and it may be correctly said that these combined to produce the result.

The case of *Lowery* v. *Western Union Telegraph Company* (60 N. Y., 198), has no application. The question there was whether certain damages were too remote from the negligent act to enhance the recovery. Nothing of that kind arises here. If the defendant is liable for the negligence, there have not been any damages allowed which were not the immediate result of the action.

Nor is this a case where a new cause has intervened between the result and the alleged cause; as in the well-known case of the squib. (*Scott* v. *Shepherd*, 2 W. Black., 892.) In that case, however, though the principle was recognized, it was held not applicable.

It seems to us that a remark of Mr. Justice MILLER, in *Insurance Company* v. *Tweed* (74 U. S., [7 Wall.], 44), is very sound. After speaking of the numerous cases on proximate and remote causes, he says : " If we could deduce from them the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discrimination." And so we think that this case must be decided. We are to inquire whether the defendant was negligent, and whether the plaintiff was careful, and then whether the accident which she suffered was the result of the defendant's negligence.

It was left to the jury to say whether the plaintiff was negligent. The defendant asked the court to charge that if the boys stopped at a point outside of the path where it was safe for her to pass and she saw it, it was her duty to have passed at that place. But the court left that to the jury to be considered on the point whether she acted as a person of ordinary prudence would have done. This was correct. (*Lent* v. *N. Y. C. and H. R. R. R. Co.*, 120 N. Y., 467.) The defendant cites *Ryan* v. *Manhattan Railway Company* (121 N. Y., 126). The point there decided was that the court should have charged, under the proof, that, if the space between cars and platforms was not more than eight inches, defendants were not negligent. That was not a question of contributory negligence, but a question whether, under the proof, eight inches could be held to be proper. The point in this case is very different. A traveler, seeing another approaching on a road drifted with snow, has to exercise his judgment as to the best place for passing. All that he is required to do is to act as a prudent man would do. A misjudgment is not negligence. Nor is there any evidence here that the plaintiff did not judge wisely.

Certainly the plaintiff was not responsible for the fright of the horse. She did not anticipate that the barrel of coal would slide off. And the whole question of her alleged contributory negligence was properly left to the jury.

The defendant further urges that it was not bound to erect a barrier at this point. The court submitted to the jury the question whether the road at this point was dangerous, and whether a person of ordinary prudence would have considered it dangerous. The verdict of the jury on this point must stand, unless it can be said,

as matter of law, that it was not the duty of the town to guard the place. The defendant cites *Hubbell* v. *Yonkers* (104 N. Y., 434). There the street was thirty feet wide, macadamized, and in good condition. There was a sidewalk on the west side ten feet wide, with a curb-stone eight inches high. On the west side of that sidewalk there was an embankment twelve feet deep with no railing. The Court of Appeals held that there was no lack of care in not fencing the embankment. The width of the road and the sidewalk, with its curb-stone, were held to be a sufficient protection. But the court is careful to distinguish this from the cases of a road passing along a precipice. "Those are cases where the roadway itself runs along such a place, and danger from the want of a railing was naturally to be apprehended." In the present case the road was seventeen feet nine inches wide. The plaintiff had to turn out towards the pond in order to pass the other vehicle. The beaten road was not then more than three feet from the edge of the bank. It might, therefore, well be submitted to the jury to say whether danger from the want of a railing was not to be apprehended; and as a railing could be built for seventeen dollars the negligence of defendant was still more apparent.

The defendant urges that the accident was one of a class so rare, unexpected and unforeseen that the defendant could not be charged with negligence. The particular cause by which this horse was frightened may have been unexpected. But it is not rare or unexpected that horses shy, or are frightened, from some cause. And because this kind of event is not unexpected, such places as the one where plaintiff was injured should be protected.

One Getty had been commissioner of highways for three years prior to March 6, 1888. On that day Wilson was elected. Plaintiff's accident happened the twenty-fourth of that month. The defendant asked the court to charge that if the action cannot be maintained against the commissioner in office on the twenty-fourth of March, it cannot be maintained against the defendant. The court refused. The meaning of the request is probably that if the action could not, as the law was prior to chapter 700, Laws of 1881, have been maintained against the commissioner, it cannot be maintained against the defendant.

Section 1 of that chapter is as follows: "The several towns in

this State shall be liable to any person suffering the same for all damages to person or property by reason of defective highways or bridges in such town, in cases in which the commissioner or commissioners of highways of said towns are now liable therefor, instead of such commissioner or commissioners of highways." It will be seen by this last clause that the liability of the towns is substituted for that of the commissioners, and is not additional. Section 3 is important in construing this act. "If the defect in such highway or bridge shall have been caused by the misconduct or neglect of the commissioner or commissioners of highways of the town in which the same may be situated, then, and in such case, the town against which any judgment shall have been recovered by reason of such defective highway or bridge, may bring an action against such delinquent commissioner or commissioners of highways and recover the amount of such judgment." If a judgment is recovered against a town, then there must have been not only a defect, but also negligence in some one. And this section implies that there may be cases in which the defect is not caused by the misconduct or neglect of the commissioner, and, yet, in which the town may be liable. For it says: "If the defect shall have been caused," etc., thus indicating that there may be cases where judgment may be recovered against the town for its own neglect. Turning, then, to the first section we see that towns are liable in cases in which the commissioners were liable before. Those cases were when they neglected to make repairs of defects which they ought to have known, and for which they had or could obtain the necessary means. These, then, are the cases in which towns are liable; that is when they neglect to make repairs of defects which they know, or ought to have known, and for which they have or can obtain the necessary means. If the neglect is that of the commissioner, he is liable to the town; if it is the neglect of the town, he is not.

As to the matter of knowledge, the knowledge of the former commissioner must be treated as the knowledge of the town. The failure to provide necessary funds may be the neglect of the town. (*Ivory* v. *Deerpark*, 116 N. Y., 476.) This statute, to a considerable extent, has placed towns in this respect in the position of villages and cities. We think there was no error in refusing to charge as requested.

If the town, by withholding funds from the commissioner, can

free the commissioner from liability and can then escape liability itself, because the commissioner was blameless, the statute has left the injured traveler remediless.

An exception was taken to what was said to Getty, the commissioner, about the condition of the road. That was proper as tending to show notice.

There was no error in the admission of the photograph of the place, although it was taken subsequently and after a fence had been erected. The court stated that any subsequent change was no evidence of negligence.

The judgment and order are affirmed, with costs.

LANDON and MAYHAM, JJ., concurred.

Judgment and order affirmed, with costs.