ALVAH ARMSTRONG, Respondent, *v.* MICHAEL BOOMANSOUR, Appellant.

Fourth Department, May 2, 1928.

Motor vehicles — transfer — action to recover motor vehicle — plaintiff took automobile in trade — registration plates on automobile were lost and original owner took necessary steps to secure new certificate of registration and new plates — plaintiff and original owner and third person went to county clerk's office for that purpose — after original owner received new certificate and new plates third person accompanied him to county clerk's office — third person directed clerk to make transfer to him — plaintiff had not informed clerk or original owner as to whom transfer was to be made — third person after transfer of registration to him sold automobile, on strength of registration and insurance policy, to defendant's vendor — Highway Law, § 282, subd. 8, provides only method of transfer — purchaser from third person was justified in relying on transfer to third person — plaintiff estopped to claim title as against defendant — discrepancy in numbers on certificate and on plates immaterial — no question of fact presented as to whether defendant's vendor relied on possession and registration.

The plaintiff is suing to recover the possession of an automobile. It appears that the plaintiff took the automobile in question in trade for another automobile; that the person with whom he traded did not make a transfer of the automobile to the plaintiff at the time of the trade; that the original owner had a registration certificate and plates; that the plates were lost while the automobile was in the possession of the plaintiff; that some months later the original owner, together with the plaintiff and a third person who had been much around plaintiff's garage and who had occasionally driven the automobile, went to the office of the county clerk and were there informed that it would be necessary for the original owner to secure new license plates and advised as to the necessary steps; that the plaintiff did not then inform the clerk or the original owner as to whom the automobile was to be transferred; that the original owner procured a new registration certificate and new plates, the numbers on which, through some error, did not correspond with the numbers on the certificate of registration; that thereafter, on the same day, the third person saw the original owner and advised him that in order to make the transfer it was necessary for him to sign a transfer of registration; that said third person and the original owner went to the county clerk's office where the third person told the clerk that the registration was to be transferred to him, and this was done, but without the plaintiff's knowledge or consent; that said third person told the original owner that he had purchased the automobile from the plaintiff. After the transaction was thus completed, the third person drove the automobile to a distant part of the State where he sold it to the defendant's vendor who purchased after examining the certificate of registration in the name of the third person and comparing the motor number of the automobile with the number upon the certificate, and after examining an insurance policy in the name of the third person, but the defendant's vendor did not compare the numbers on the certificate of registration with the numbers on the license plates.

Subdivision 8 of section 282 of the Highway Law, as amended by chapter 372 of the Laws of 1922, provides the only method for the legal transfer of an automobile from one person to another which is by means of an indorsement upon the certificate of registration of the name and address of the vendee, the date of delivery and the signature of the vendor to such indorsement and the delivery of the certificate to the vendee, together with a statement of transfer of ownership.

Under the circumstances outlined in this case the defendant's vendor was justified in relying upon possession and the certificate of registration which showed that the third person was the owner of the automobile, and the plaintiff is estopped from asserting title as against the defendant who stands in the same position as his vendor, since the plaintiff failed to take the steps required by statute to effect a transfer of the automobile to himself, and for the further reason that he failed to state to the clerk or to the original owner that when the transfer was made it should be made to himself.

Against one who had purchased in good faith relying on both possession and registration, the plaintiff must be deemed estopped from setting up his ownership.

The discrepancy in the numbers on the certificate of registration and on the license plates is immaterial.

No question of fact was presented as to whether or not the defendant's vendor relied on possession and registration in making the purchase, for although he and the defendant were interested witnesses, and although the transaction between the third person and the defendant is proved only by the testimony of the defendant's vendor, still there is nothing improbable in the testimony of the defendant's vendor and he was corroborated by his possession of the certificate of registration.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Steuben on the 3d day of October, 1927, and also from an order entered in said clerk's office on the same day.

*Floyd W. Annabel* and *George F. Moore,* for the appellant.

*John W. Hollis,* for the respondent.

SEARS, J.　The plaintiff has obtained a judgment awarding him the possession of a certain automobile known as a Buick sport roadster, together with damages for its detention. The defendant questions the validity of this judgment on the grounds, *first,* that the plaintiff was not the owner of the car; and, *second,* that even if he was the owner, he was estopped by his conduct from asserting such ownership against the defendant.

The plaintiff in 1922 and 1923, when the occurrences took place out of which this action arose, was engaged in the automobile business in the village of Bath, Steuben county, N. Y. In the spring of 1922 he sold this Buick sport roadster to James Bauder. Early in December, 1922, Bauder brought the car to plaintiff's garage, directed plaintiff to put it in condition to sell and to try to sell it. Plaintiff did not succeed in making a sale. About the end of January, 1923, Bauder asked plaintiff

how much he would allow him for this car in a trade, and plaintiff said that he would allow him $1,300. On the 24th day of February, 1923, such a trade was arranged between the plaintiff and Bauder by means of telephone conversations between Bauder in Buffalo and plaintiff in Bath. A new car was delivered to Bauder at the Buffalo Buick agency by arrangement between the plaintiff and the Buffalo Buick agent, and in consideration, the plaintiff was to have the Buick sport roadster then at the plaintiff's garage in Bath valued at $1,300 and to receive from Bauder $600 in cash. This sum was on that day charged to ·Bauder on the plaintiff's books. It is evident from what afterwards occurred that Bauder had obtained in his own name previous to this time a license for the Buick sport roadster for 1923. The registration certificate, however, was not delivered by Bauder to the plaintiff when the transaction just mentioned took place nor, as will appear later, was it ever delivered to the plaintiff. Bauder did not return to Bath until the month of May, 1923. In some way, which is not explained, Bauder's number plates were removed from the sport roadster while it was in the plaintiff's garage and the plaintiff's demonstration number plates, of which he had six sets, were attached to the car.

That spring there was a man about Bath named Miles Palmanteer. Though he was not employed by the plaintiff, he was much at his garage, gave a hand to the employees at times, sold some gasoline at the delivery pump, attempted to collect some bills for the plaintiff and drove the Buick sport roadster a few times with plaintiff's permission. He talked with plaintiff about purchasing the car, but this came to nothing. Early in May, Palmanteer asked the plaintiff to let him take the roadster to Rochester for two or three days to help move some member of his family who he said lived there. The plaintiff consented to this. A little later Palmanteer spoke to the plaintiff about the number plates, said that " he didn't have any·chauffeur's license, and   *   *   *   wondered about driving with demonstration plates without a chauffeur's license." The plaintiff told Palmanteer that the plates (meaning the registration) had never been transferred to him by Bauder; that he had never received the certificate of registration, and that Bauder was the person who would have to get new· number plates as the other ones had been lost or stolen.

About this time Bauder returned to Bath, and on the morning of May 11, 1923, the plaintiff and Bauder met, and plaintiff then said to Bauder that he (plaintiff) did not have any number plates or registration card (certificate of registration) and that " it had

got to be fixed up " and that they had " got to go over and get some plates and fix it up." The plaintiff and Bauder, accompanied by Palmanteer, then went to the county clerk's office and interviewed the clerk in charge of the automobile bureau. The testimony is undisputed that nothing was said by the plaintiff or by Palmanteer either to the clerk or to Bauder to the effect that the registration was to be transferred to Palmanteer, nor is there any proof in the case other than above stated that plaintiff requested Bauder to have the registration transferred to him. There is proof, however, that the clerk told the plaintiff that before the registration could be transferred it was necessary for Bauder to have new number plates issued to him, and for this purpose he must make an affidavit that the plates previously issued had been lost or stolen, and must obtain an affidavit from the sheriff to show that both number plates were gone. Bauder made such an affidavit and the clerk prepared a form to be signed by the sheriff. The clerk then stated that there was a fee of two dollars for the issuance of the new plates and this sum was paid by the plaintiff. Plaintiff left the office before the plates were delivered but stated on the trial that he knew that the new plates would be issued to Bauder because the old plates (meaning the registration) stood in his name. Bauder obtained the sheriff's affidavit and returned it to the county clerk, and either at this time or on the next visit of Bauder to the county clerk's office a new certificate of registration in Bauder's name and new plates were issued by the county clerk. These number plates by some mistake did not correspond in number with the certificate of registration.

Shortly after this and on the same day, Palmanteer met Bauder on the street and asked Bauder to go with him to the county clerk's office and arrange for the transfer of the registration. Bauder replied that he thought this had all been done in the morning, but Palmanteer explained to him that nothing had been done but what was necessary to obtain new plates and a new certificate of registration in Bauder's name. Palmanteer and Bauder then went again to the county clerk's office and Palmanteer told the clerk that the registration was to be transferred to him. This was without plaintiff's knowledge or consent. Bauder assumed that Palmanteer had bought the car from the plaintiff, and made out the necessary transfer, which was completed by the county clerk making out and delivering to Palmanteer a registration certificate in his name. As they left the county clerk's office, Palmanteer told Bauder in answer to an inquiry that he had bought the automobile from the plaintiff for $1,300. Palmanteer attached the new number plates to the sport roadster and left Bath with the car,

Instead of going to Rochester, he drove to Malone, N. Y., where he sold the car to Henry W. Badore who paid him value for it. Before accepting the car Palmanteer exhibited to Badore his certificate of registration and Badore compared the motor number of the car with the number upon the certificate. He did not compare the numbers on the plates on the car with the number on the certificate. Palmanteer also showed Badore an insurance policy issued in his name covering the car. Badore sent the certificate of registration to the county clerk at Bath for transfer. The county clerk told the plaintiff of the receipt of the application for transfer of registration. In this way plaintiff, about June 13, 1923, learned of the whereabouts of the car.

The defendant Boomansour in turn purchased the car from Badore.

The foregoing facts are either undisputed or stated in accordance with the plaintiff's claim.

The first contention of the defendant, namely, that the plaintiff had not sufficient title to maintain the action is based on the language of subdivision 8 of section 282 of the Highway Law (added by Laws of 1910, chap. 374), as amended by chapter 372 of the Laws of 1922,* which was effective at the date of these transactions. That statute in part is as follows: " Upon the sale or transfer of a motor vehicle registered in accordance with this section, the vendor shall endorse upon the certificate of registration of such motor vehicle the name and address of the vendee and the date of delivery, and shall sign such endorsement and shall deliver the same to the vendee together with a statement of transfer of ownership, said statement to be furnished by the Tax Commission and shall be in such form and executed in such manner as the Tax Commision shall prescribe. The vendee shall complete the execution of such statement and within ten days after the receipt thereof file the same with the Tax Commission. * * * It shall be unlawful for any person to deliver or offer to deliver or to accept or offer to accept a transfer of any motor vehicle unless there be produced and delivered to the vendee the certificate of registration issued for such vehicle endorsed as hereinbefore required. A violation of this provision shall be a misdemeanor * * *."

The defendant argues that this section prescribes the sole manner in which title to a motor vehicle could at the time in question be lawfully transferred.

We do not find it necessary to pass upon this question, for even assuming that title passed from Bauder to the plaintiff, we think the circumstances as stated such as to estop the plaintiff

---

* Since amd. by Laws of 1924, chap. 360, and Laws of 1925, chap. 517.— [REP.

ARMSTRONG *v.* BOOMANSOUR.

from asserting title against the defendant. The purpose of the statute quoted is to furnish a method of identifying the owner of a motor vehicle. Such identification is often important for the disclosure of the identity of those responsible for reckless and negligent driving, and quite as important is the part it plays in preventing the easy disposal of stolen cars. The registration certificate is the indicia of title on which a buyer will naturally rely when dealing with one who offers a registered car for sale. In the instant case the plaintiff when he purchased the car from Bauder failed to take the steps required by the statute. He did not exact from Bauder a delivery of the certificate of registration. The plaintiff did not even stop with this omission. While the car was actually his own, he assisted Bauder to obtain a new certificate of registration in Bauder's own name, and new number plates, without making it clear to Bauder or to the clerk in the automobile bureau of the county clerk's office that Bauder was to follow up the transaction by transferring the registration to him. He thus both by his omissions and by his affirmative act left it in the hands of Bauder to transfer the registration, this mark of title, to whomsoever he would. Palmanteer took advantage of this, and by his false statement deceived Bauder into thinking that the plaintiff had transferred the plaintiff's rights to him. If the plaintiff had followed the mandatory provisions of the statute and required the transfer of the registration to himself, it would have been beyond the power of Palmanteer to have worked the wrong which he did. Against one who has purchased in good faith relying on both possession and registration as Badore did, the plaintiff must be deemed estopped from setting up his ownership. (*Parke* v. *Franciscus*, 194 Cal. 284; *Vanderpool* v. *Burkitt*, 113 Oreg. 656; *Miller* v. *Colonial, etc., Ins. Co.*, 117 Kans. 240; *First Nat. Bank* v. *Kissare*, 22 Okla. 545; *Royle* v. *Worcester Buick Co.*, 243 Mass. 143; *Moore* v. *Metropolitan Nat. Bank*, 55 N. Y. 41; *People's Trust Co.* v. *Smith*, 215 id. 488.) The discrepancy in the numbers on the certificate of registration and on the number plates seems immaterial. It was apparently due to an error in packing the plates. If Badore had noticed it, it could not have given notice of more than the fact that an error had been made in issuing the particular plates. No stress was laid upon this point at the trial.

The defendant by his purchase from Badore stands in the same position as Badore.

Although Badore and Boomansour are interested witnesses, and the transaction between Palmanteer and Boomansour is proved only by the testimony of Badore, nevertheless, we do not think that a question of fact arose as to Badore being a purchaser who

relied on possession and registration.    There is nothing improbable in Badore's story, and he is corroborated by his possession of the certificate of registration.    (*Hull* v. *Littauer*, 162 N. Y. 569.) If there was a question of fact, a verdict based on a rejection of Badore's testimony in respect to the purchase would be contrary to the weight of evidence.

The defendant's motion for judgment at the close of all the evidence should have been granted.

The judgment and order should be reversed on the law and the facts, and judgment directed for the defendant for the dismissal of the complaint, with costs.

All concur.    Present — HUBBS, P. J., CLARK, SEARS, TAYLOR and SAWYER, JJ.

Judgment and order reversed on the law and facts, with costs, and judgment directed in favor of the defendant dismissing the complaint, with costs.