ALFRED PAGLIA, Respondent, v. STATE OF NEW YORK, Appellant.

Fourth Department, May 18, 1951.

282

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *Henry S. Manley* of counsel), for appellant.

*James R. Skahen* for respondent.

PIPER, J. The Court of Claims has held that in the issuance of a motor vehicle registration certificate the State owes a duty to a subsequent purchaser of the registered vehicle to use some degree of care in determining that the applicant is the owner of the motor vehicle for which registration is sought. If such is the rule of law, it must arise from the statute.

The first statute on this subject was chapter 538 of the Laws of 1904 and was entitled "An Act in relation to the registration and identification of motor vehicles and the use of the public highways by such vehicles." It provided in subdivision 1 of section 1: "Except as otherwise herein provided, it shall be controlling, (1) upon the registration and numbering of motor vehicles and chauffeurs, (2) on their use of the public highways, and (3) on the penalties for the violation of any of the provisions of this act." In subdivision 1 of section 2: "Every person hereafter acquiring a motor vehicle shall * * * file in the office of the secretary of state a statement of his name and address, with a brief description of the vehicle to be registered * * *." It then required the Secretary of State to file "such statement in his office, register such motor vehicle in a book or index" and issue a "seal" with the "registration number inserted therein", and placed the burden on the owner to affix the "seal" to the motor vehicle.

In the consolidation of the statutes in 1909, the substance of the statute was included in the Highway Law, as article 11 (L. 1909, ch. 30). In 1910 article 11 was repealed and rewritten and re-enacted (L. 1910, ch. 374). The registration statute

was made section 282 of the Highway Law. It required the owner to file a " verified application for registration ", and in addition to the plate or seal, required the Secretary of State to issue to the owner " a certificate of registration."

In 1924, the Legislature removed the Motor Vehicle Bureau from the Secretary of State's Office, established a Motor Vehicle Bureau in the Department of Taxation and created the office of Motor Vehicle Commissioner. Section 281 was amended and recites the article shall be controlling " a. Upon the registration, numbering and regulation of motor vehicles and the licensing and regulation of chauffeurs and operators " (L. 1924, ch. 360).

Subdivision 1 of section 282 was amended by chapter 514 of the Laws of 1926 in various respects and added this sentence at the end: " The said application shall contain or be accompanied by such evidence of the ownership of the motor vehicle described in the application as may be required by the commissioner or his agent."

In 1929, articles 11 and 11-a of the Highway Law and the General Highway Traffic Law were repealed and the substance of all three re-enacted into the Vehicle and Traffic Law. The provisions as to registration formerly contained in section 282 of the Highway Law were transferred to section 11 of the new statute (L. 1929, ch. 54).

Section 11 provides that motor vehicles shall not be operated upon the public highways " without first being registered ", and that " Every owner of a motor vehicle * * * shall " apply to the commissioner for registration of the motor vehicle; and the commissioner shall upon receipt of a proper application and the fee " issue and deliver * * * to the owner a certificate of registration."

In all the statutes of this State relating to registration the burden is placed on the owner to apply for the registration of the motor vehicle and in none of those statutes is the commissioner charged with any duty to conduct any investigation of the applicant's ownership or title to the motor vehicle in question. Further there is no provision of the statute which indicates that a certificate of registration is a certificate of title.

A number of States do have a motor vehicle title law and issue certificates of title to owners of motor vehicles. Committees of the New York State Legislature have studied this subject and individual members have introduced bills designed to institute such procedure, but none of these bills have been reported out of committee. In its 1950 report to the Legislature, one of these

committees stated: " At its most recent meeting, the committee was advised by the Motor Vehicle Bureau that a title law which would affect all cars in the state would require a new building and from 800 to 900 employees to service such a program. Representatives of the Motor Vehicle Bureau said they had as yet no evidence that the losses due to lack of a title law were sufficiently great to justify the initiation of such a program." (N. Y. Legis. Doc., 1950, No. 74, p. 143.)

It seems clear that the certificate of registration was never intended by the Legislature as a certificate of title.

If there is any intent to impose a duty on the State which may be relied on by a subsequent purchaser of the registered motor vehicle, it must be found in the second last sentence of subdivision 1 of section 11 which reads as follows: " The said application shall contain or be accompanied by such evidence of the ownership of the motor vehicle described in the application as may be required by the commissioner or his agent." Here again the burden is on the applicant to furnish such " evidence of the ownership " and the standard or degree of proof is left to the discretion of the commissioner.

The record before us discloses that the commissioner issues to automobile dealers forms called " Certificate of Sale " and known as forms MV50. These bear serial numbers and are in triplicate. When the dealer sells an automobile he makes out these forms, gives one to the purchaser, which apparently is the evidence of ownership required by the commissioner, sends one to the office of the commissioner and keeps the third copy on file. The purchaser presents the form to the county clerk or other office of the bureau with his application for license of the automobile.

On July 29, 1948, a dealer in Batavia, N. Y., advised the Buffalo office of the Motor Vehicle Bureau that MV form No. B 774195 and two others had been stolen. The Buffalo office forwarded this information to the main office in Albany. Bulletins were sent from the Albany office on August 11, August 31, September 30, and October 22, 1948 to all offices which were authorized to issue registrations of motor vehicles advising of the thefts of these forms and directing the officers or agents of the commissioner to examine all certificates presented and if any of the stolen certificates were presented to withhold them with application and notify the local police authorities. One, and possibly all, of these bulletins listing MV form No. B 774195 was received by the automobile registration office of the County Clerk of Cayuga County and was posted in that office. On

November 4, 1948, a man claiming to be Ralph Rocco of Auburn, N. Y., presented MV form B 774195, which on its face disclosed that he had purchased an Oldsmobile 1948 sedan from Owego Motors, and an application for a license of the car described in the MV50 form, and an assistant to the Deputy County Clerk issued a certificate of registration to him for such vehicle. Three or four days later the Oldsmobile for which the registration was issued was stolen from its owner, Richard Ahart.

On November 8, 1948, claimant, a used-car dealer, purchased the stolen car from a man who represented himself as "Rocco." Claimant had never seen him before and the record does not disclose that he made any inquiries concerning him. Claimant compared the engine and serial number on the car with the registration certificate, then called the county clerk's office in Auburn and was informed they did not give out information over the telephone. He then called " a private investigating outfit " in Auburn " to see if they could find out who transferred title, if there were any incumbrances against the car." He completed the purchase by giving " Rocco " a check for $2,450. About an hour later he negotiated a resale of the car to C. Roy Hawks. Hawks would not complete the deal until he had information as to who sold the car to " Rocco ". Within an hour and a half from the time claimant purchased the car he found that " Rocco " had represented, through the forged MV50 form that the car was sold to him by Owego Motors, that Owego Motors had sold the car originally to one Richard Ahart and that the car had been stolen that day from him. In fact Ahart thought it was still in the parking lot at his place of employment until claimant called him and inquired if he had sold the car; Ahart replied in the negative and told claimant it was in the parking lot, but when he looked for the car it was missing. Claimant endeavored to stop payment on his check to " Rocco " but it had been cashed. Ahart demanded return of the car and claimant returned it to him and filed a claim against the State for $2,450.

On these facts the Court of Claims has found " That the Auburn, New York, office of the Bureau of Motor Vehicles, negligently issued title to and license plates to Ralph Rocco." " That the claimant relied upon the title issued by the Bureau of Motor Vehicles ". " That the claimant exercised due and reasonable care and caution in purchasing said automobile." " That the proximate cause of claimant's damage was the negligent acceptance of stolen certificate of sale number B-774195 and the negligent issuance of title thereto to Ralph Rocco."

" That claimant was free from contributory negligence."
" That the claimant is entitled to an award in the sum of $2,450.00."

We do not agree with the trial court that claimant has established his claim. We do not find that there is anything in the statute or in legislative intent to impose a duty on the State to a subsequent purchaser in the registration of motor vehicles. Even though such a duty is imposed we think the record contains insufficient proof to establish the State's negligence. No evidence was presented by anyone to show under what circumstances the registration certificate was issued to " Rocco." The clerk in the office who issued the certificate was not sworn although it does not appear that she was not available. It does not appear how many bulletins were on file in the issuing office in reference to stolen MV50 forms, whether or not there were a line of people applying for registration certificates or any facts whatsoever except the fact that the registration and plates were issued to Rocco.

But assuming further that the State was negligent, we think the issuance of the registration certificate was not the proximate cause of claimant's loss. The issuance of the registration certificate occurred on November 4th and the car was not stolen until November 8th. Until the theft of the car intervened, the certificate of registration was of no value.

" Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party." (*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425, 431.) In that case the defendant failed to " take up " certain bills of lading on delivery of several cars of wheat, although the bills required that no delivery be made until they were taken up and the Penal Law also required it. The consignee altered the " spent bills " by redating them and used them as security for a loan at plaintiff bank. It was there held that the negligent and criminal act in failing to take up the bills was not the proximate cause of plaintiff's loss. (See, also, *Mairs* v. *Baltimore & Ohio R. R. Co.*, 175 N. Y. 409, and *Benenson* v. *National Surety Co.*, 260 N. Y. 299.)

We come next to the question of contributory negligence. While ordinarily that question is for the trier of the facts, in a case such as we have here where the trial court has determined the fact on an erroneous theory of law, we think we may examine into the question. We have already pointed out that the trial court has found that the thief had " title to " and " certificate of title " issued by the commissioner through his agent. That

we know was not a correct finding of fact. This being so, we may look to the facts. The record discloses that Rocco, if that was his name, had a registration certificate for the Oldsmobile he had in his possession. The certificate was prima facie evidence of ownership, nothing more. The possession of the car carried no greater weight. Claimant was engaged in the used car business. He did not know '' Rocco '', nor did he know that the man in possession of the car was '' Rocco.'' He made inquiries only for liens against the car. Common prudence or ordinary care required him to make some inquiry concerning the person he was dealing with, particularly when that person was attempting to sell a practically new car that had been licensed under his name for only a few days, and also concerning the former owner of the automobile. That such inquiries would have resulted in knowledge which would have prevented claimant's loss is apparent from the record. To our mind, claimant's negligence was the proximate cause or at least one of the causes of his loss, and for that reason alone, if for no other, he has failed to establish his claim.

We reach the conclusion that the judgment should be reversed and the claim dismissed.

McCURN, J. (dissenting). While the registration certificate is not under our statutes a certificate of title, I disagree with that part of the above opinion which states in substance that the State in issuing a certificate of registration owes no duty to a subsequent purchaser of the motor vehicle so registered. The statutory provisions clearly indicate that at least one principal purpose for registration of motor vehicles is to afford a means of identification of the owners thereof. Our courts have accordingly held that the registration certificate is prima facie evidence of ownership (*Ferris* v. *Sterling,* 214 N. Y. 249). The statute and the rules promulgated by the Commissioner of Motor Vehicles make provision for the relicensing upon the sale or transfer of ownership of a registered motor vehicle. It is a matter of common knowledge that upon the sale of a motor vehicle the registration certificate is important, if not indispensable evidence as to the title of the seller. The important part which it plays in preventing the disposal of stolen cars has been judicially recognized. (See *Armstrong* v. *Boomansour,* 223 App. Div. 511, 516, affd. 252 N. Y. 590.)

The State's duty to a subsequent purchaser in the issuance of a license arises from the hazard or risks reasonably to be foreseen. That the risk to the claimant here was not only

reasonably foreseeable but actually was foreseen, is evident from the fact that the Commissioner of Motor Vehicles notified its license issuing offices, including the Auburn office, of the theft of the MV50, with instructions to "withhold any of the above certificates with applications if presented at your office and notify the local police authorities." In *Benenson* v. *National Surety Co.* (260 N. Y. 299, 303), the court while stating that it had no application to that case, nevertheless recognized and stated the rule that " ' the mere intervention of a crime does not break the sequence of cause and effect if the crime might reasonably have been foreseen when the original default occurred ' ''. The issuance of the license under the circumstances here, including the unexplained failure of the commissioner's representative at the Auburn office to comply with the instructions furnishes a sufficient basis for the finding of negligence and proximate cause.

The question of claimant's contributory negligence should be determined from the circumstances apparent at the time he acted rather than from subsequent developments. " The test of contributory negligence or want of due care is not always found in the failure to exercise the best judgment or to use the wisest precaution. Some allowance may be made for the influences which ordinarily govern human action, and what would under some circumstances be a want of reasonable care might not be such under others ''. (*Lent* v. *New York Central & Hudson Riv. R. R. Co.*, 120 N. Y. 467, 473.) The standard for measuring his conduct is that of a reasonably prudent man under like circumstances. It presented a question of fact for the trial court, and in my opinion, nothing appears in this record which should prompt us to set aside the trial court's finding as either contrary to or against the weight of evidence.

I dissent and vote for affirmance.

All concur with Piper, J., except McCurn, J., who dissents and votes for affirmance, in a separate opinion. Present — Taylor, P. J., McCurn, Vaughan, Piper and Wheeler, JJ.

Judgment reversed on the law and facts and claim dismissed, without costs of this appeal to either party. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.