Charles Frederick **BEAM**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 16615.

United States Court of Appeals Sixth Circuit.

Aug. 3, 1966.

Charles F. Beam, in pro. per.

Merle M. McCurdy, U. S. Atty., Nathaniel R. Jones, Asst. U. S. Atty., Cleveland, Ohio, for appellee.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Appellant appeals from a denial of a motion to vacate sentence. He had previously been convicted on his plea of guilty to three counts charging violations of 18 U.S.C. § 2314 (1964).

Section 2314 reads:

*"Transportation of stolen goods, securities, monies, or articles used in counterfeiting.* Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof—

"Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both."

The term "securities" as used in § 2314 is defined in 18 U.S.C. § 2311 (1964) as follows:

" 'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing; * * * "

Specifically appellant herein had been charged with transporting in interstate commerce certain falsely made, forged and counterfeit securities, to wit, "credit sales invoices" of the Esso Company and Standard Oil Company of Ohio. Examination of the indictment in the original case shows that the "credit sales invoices" involved are the sales slips which a holder of an oil company credit card is required to sign in making a purchase. Beam was charged with falsely and fraudulently signing another man's name to three such slips while illegally using his credit card.

Appellant pled guilty to all three counts of the indictment. He was sentenced on March 15, 1963, to five years in the federal penitentiary on each count, with the sentences to run concurrently.

The current § 2255 [1] proceedings were instituted by appellant after the Ninth

1. 28 U.S.C. § 2255 (1964).

Circuit had held in Barack v. United States, 317 F.2d 619 (C.A. 9, 1963), that charge vouchers, such as those signed by holders of credit cards, were not "securities" within the meaning of 18 U.S.C. § 2314. The District Judge, noting that the Ninth Circuit also had held that under certain circumstances such vouchers might be certificates of indebtedness within the meaning of the statute, depending upon the facts as proved, denied relief in the § 2255 proceeding on the ground that such an attack could not be made in a collateral proceeding.

Since that date the Fifth Circuit has considered this same problem in a carefully reasoned opinion by District Judge Joe Estes, Merrill v. United States, 338 F.2d 763 (C.A. 5, 1964). In this case the court said:

"Concededly the credit card itself is not a security. The term 'securities' defined in § 2311 does not expressly include a 'credit sale invoice' or 'sales ticket', as the instruments here in question are denominated. Section 2311, however, does expressly include 'any * * * evidence of indebtedness * * *'—without defining this term —and ' * * * any instrument commonly known as a "security" * * *'.

"Since the term 'evidence of indebtedness' can have various meanings depending upon the context of its use, it must be determined what Congress meant by the language used in the statute.

"Each of the 'securities' specified in § 2311 consists of a single document which in itself is sufficient to establish a given right, relationship, or property interest. It is reasonable to conclude that the intended meaning of 'evidence of indebtedness' in this Criminal Statute was similarly circumscribed. The detail with which Congress defined securities in § 2311 indicates that it would have included credit sale invoices in unmistakable terms if it had so intended. The credit card is simply a credit identification. In practically all present day credit 'sales transactions' the purchaser presents some type of identification—such as a credit card—and signs a credit sales ticket or invoice, which evidences an obligation to pay the vendor. It by no means follows that men in commerce understand and this Act of Congress means that all credit identifications are a prohibited 'thing' used to forge a 'security,' or that a credit sales ticket is such a 'security.'

\* \* \* \* \* \*

"We conclude that Congress employed the term 'securities' in the usual commercial sense, to refer to instruments in themselves valuable to a thief. A credit sale invoice is not." Merrill v. United States, supra at 769.

Decisions by Courts of Appeals and District Courts have divided on the question dealt with here. In general accord with the *Merrill* and *Barack* view we find: United States v. Jones, 182 F. Supp. 146 (W.D.Mo., 1960); United States v. Fordyce, 192 F.Supp. 93 (S.D. Cal., 1961); United States v. Young, 210 F.Supp. 640 (W.D.Mo., 1962); United States v. Malone, 231 F.Supp. 174 (S.D.Texas, 1964); United States v. Crouch, 224 F.Supp. 969 (D.Del., 1963).

Contra we find: Lewis v. United States, 301 F.2d 787 (C.A. 10, 1962); Ingling v. United States, 303 F.2d 302 (C.A. 9, 1962); Williams v. United States, 192 F.Supp. 97 (S.D.Cal., 1961); United States v. Rhea, 199 F.Supp. 301 (W.D.Ark., 1961); United States v. Mingo, 217 F.Supp. 729 (M.D.Fla., 1963).

Recently this same problem has been considered by Judge William Miller in the United States District Court for the Middle District of Tennessee. Judge Miller concluded that such vouchers or sales slips were not certificates of indebtedness within the meaning of the statute, and that an indictment based thereon did not state an offense against the United States. Judge Miller granted § 2255 relief in Barnett v. United States, Crim. No. 13,679, M.D.Tenn., 258 F.Supp. 455, June 29, 1965. In this case the government then filed notice of appeal to this

court. Subsequently, the appeal was dismissed in Barnett v. United States, No. 16,807, on advice to this court from the United States District Attorney that the Solicitor General of the United States had decided not to seek certiorari in either the *Merrill* case or the *Barack* case.

This court finds the reasoning of the Fifth Circuit Court of Appeals in the *Merrill* case persuasive.

█ █ It seems to this court that the term "securities" was used by Congress to refer to forms of negotiable instruments which in themselves had monetary value. Patently the vouchers or sales slips involved in this case did not.

This statute in its original form long preceded any widespread use of gasoline company credit cards. It is difficult for us to hold that its language may, consistent with Congressional intent, be appropriately interpreted as applicable to such vouchers.

We recognize, of course, that the term "evidence of indebtedness" contained in the definition section of § 2311 can logically be ascribed a much broader meaning than we have adopted above in relation to the term "securities." See Lewis v. United States, supra; Ingling v. United States, supra. But the basic definition of "securities" we find in Webster:

> "2a: Something given, deposited, or pledged to make certain the fulfillment of an obligation (as the payment of a debt): property given or serving to make secure the enjoyment or enforcement of a right: Guaranty, Pledge." Webster's Third International Dictionary, at 2053–54 (1964).

█ In addition, we feel that the definition in § 2311 should be read *in pari materia*. So read, every defining term (including "evidence of indebtedness" in one of its meanings) is that of an instrument which has value in itself, is capable of being negotiated, and hence is of value to a forger or a thief. A sales slip such as is involved in this indictment has no such value.

█ It may well be that theft of credit cards and their transportation and fraudulent use in interstate commerce requires federal prohibition. If so, it is a proper subject for Congressional consideration.

█ We believe that the sentences here attacked are vulnerable to collateral attack, since they are based upon an indictment which states no offense against the United States government. Martyn v. United States, 176 F.2d 609 (C.A. 8, 1949); Marteney v. United States, 216 F.2d 760 (C.A. 10, 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745(1955).

The judgment of the District Court is reversed and the case is remanded to the District Court for the vacating of the sentences and the release of the appellant.

In view of the division of opinion on construction of the statute referred to above, the mandate in this case is stayed for thirty (30) days in order to allow the government to file a petition for certiorari if it so desires.