Martin M. Kolbrener, J.
Defendant was indicted for the crime of grand larceny. She is alleged to have stolen $20,000 from her bank employer.
On October 25, 1965, while she was an employee in the counting room of the night deposit division of the bank, late in the afternoon it was found that a “ brick ” of $20,000 in bills was missing after the accounts were otherwise proven. An intensive search was made for the money with no success. Police were called. One of the detectives testified that he questioned all the employees of the room where the money was kept and. in the course of questioning defendant, she stated that between 3:30 and 4:00 p.m. she went out to her car after receiving a telephone call from her husband that he had absent-mindedly left the radio on in the car. That she left the room following a call, was confirmed by the other employees. She was the only person who had left the room after all the money was accounted for and before it was discovered that the $20,000 was missing.
She also told the police during questioning that her husband later picked up the car and drove it home. Two detectives were dispatched to the home of the defendant. Her husband was home, as were his mother and father. The detectives asked to see the car and were then told by him that he did not have the car; that he had not picked it up. This, of course, is not what the defendant had told the police. The police asked him if he would give his consent to search the car. Whereupon his mother *788 stated: “Don’t you have to have a search warrant? ” The detective is alleged to have told her that they could get one but it would just “ delay the procedure ”, whereupon defendant’s husband said “ They can search the car, we have nothing to hide.” The defendant at the direction of the police thereupon wrote out:
Oct. 26, 1965
I Charles Sapienza Hereby give permission to the Nassau County Police permission to search my ear 1962 Pontiac Reg. QB 9227.
Charles Sapienza
It should be here stated that the car was registered in his wife’s name. They both drove it.
In the meantime the defendant, who had consented to take a so-called lie detector test with several other employees of the bank deposit room was in police headquarters from about 10:45 p.m. to 12:30 a.m. She was then taken to the Fifth Precinct at about 1:00 a.m. There she was asked to give the car keys to one of the detectives who had been sent to pick them up, after defendant’s husband told detectives that he had neither the car nor the keys at home. The keys were given by defendant to the detective and taken to the parking lot behind the bank in Valley Stream between 1:45 and 2:00 a.m., at which time the husband arrived at the parking lot in the company of the detectives. The keys were then given to the husband by the police and he was asked to open the car, which he did. The $20,000 was found concealed under the rear seat of the car. While this was going on, defendant was still in the precinct police station house miles away. The defendant was placed under arrest at about 1:45 to 2 o’clock but she had been in custody from 10:30 p.m.. when she went with the police to headquarters in Mineóla to take the polygraph test. Defendant argues that the search was unreasonable and in violation of the Fourth Amendment of the United States Constitution, that there was no probable cause for the arrest or for the search of her car; that the consent of the husband was coerced and ineffectual as to the defendant; that it was a trespass, that the search was not contemporaneous and coincidental to any arrest.
On the other hand, the District Attorney argues that there was probable cause for the arrest and that the search was incidental to and contemporaneous with the arrest, that in any event the vehicle was legally searched because of the voluntary consent given by the husband.
I find that defendant’s husband voluntarily consented to the search of the car, and thus the resultant search and seizure *789 by the police was not a violation of the Fourth Amendment. Consent to search may be given by a person intelligently aware of his rights and also free of coercion or duress, actual or implied. (United States v. Smith, 308 F. 2d 657, cert. den. 372 U. S. 906.)
In this case we are dealing with the husband’s written consent to search the car. Such a writing generally follows deliberation. There is testimony undenied that the husband’s parents indicated in his presence that the police should have had a search warrant. The husband was thus made aware of his legal rights and apparently believing in the innocense of his wife and eager to help her, consented in writing to the search.
In United States v. Heine (149 F. 2d 485, 488, cert. den. 325 U. S. 885) the court said: “Nor does the record support the claim that this evidence was taken from defendant’s home without consent or proper warrant. It shows on the contrary that his wife did at best resent the search, without at any time withholding her consent. Beszutek v. United States, 2 Cir., 147 F. 2d 142, and cases cited. ’ ’
On this subject I find the testimony of the police officers clear and more believable than the husband’s testimony. (People v. Kortwright, 236 N. Y. S. 2d 385.) In People v. Mosley (26 A D 2d 668, 669), the court said: “It has consistently been held that consent to a search may be operably given by a person other than the defendant, if that person occupies the premises or vehicle searched or has possession of the property seized, and the evidence thus obtained is admissible against the defendant (People v. Matthews, 21 A D 2d 883; People v. Kortwright, 236 N. Y. S. 2d 385).”
I find that the car was in fact a family car jointly owned by husband and wife. While it is true that the auto was registered in the name of the wife, the certificate of registration is not conclusive proof of title but presumptive evidence of ownership. (Paglia v. State of New York, 278 App. Div. 281, affd. 303 N. Y. 821.) The testimony at the hearing established that the husband signed the purchase-money notes for the purchase price of the car; the defendant made the payments on the car with money furnished her by the husband; there were at least two sets of keys to the car and perhaps three; both husband and wife each carried on his person one half of the registration certificate ; both husband and wife used the auto interchange ably for their individual and common purposes. Ironically, when defendant was questioned at the Fifth Police Precinct, she insisted that her husband then had possession of the car (when he gave consent to the search which led to recovery of the $20,000 from *790 the car). There was sufficient dominion and control of the car by the husband to give him authority to permit a search by the police. (People v. Matthews, supra.)
A similar decision was made in State v. Coolidge (106 N. H. 186). There the defendant husband was the registered owner of the automobiles but they were used by both husband and wife. The cars, in short, were family automobiles to which the wife had access and control and both had operators’ licenses. The court found that although defendant’s wife received no specific permission to give consent, the consent to search the automobiles was found to have been legal and the evidence was not suppressed.
Having found that the husband and wife jointly owned the car and that the husband gave his permission, I find that the police were authorized to search any part of that car. (People v. Helmus, 50 Misc 2d 47.) The argument that the keys were illegally taken from defendant is not sound. When the keys were given to police by the defendant, the police had probable cause to arrest her; she was in actual custody and strictly speaking, she was under arrest (Code Grim. Pro., § 171). The confiscation of the keys is a classic legal exercise of police power to seize contraband or to prevent the disposition of stolen property. (Harris v. United States, 331 U. S. 145, 154; Carroll v. United States, 267 U. S. 132, 149, 151.) Under .the circumstances there was a valid consent, the keys were legally confiscated and therefore the motion to suppress should be denied. It is therefore
Ordered, that the defendant’s motion to suppress the evidence ($20,000 in United States paper currency found under the rear seat of the car) is denied.