**UNITED STATES of America**

**v.**

**Bernard ROSENTHAL, Defendant.**

**No. 72–CR–59.**

United States District Court,
E. D. New York.

May 3, 1972.

Robert A. Morse, U. S. Atty., E. D. N. Y., for United States by Vincent J. Favorito, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Nathan Lewin, Martin D. Minsker, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

JUDD, District Judge.

Defendant Rosenthal has moved to dismiss the indictment against him for failure to state an offense under federal law.

The indictment charges violation of 18 U.S.C. § 2314 by conspiracy to transport and substantive acts of transportation in interstate commerce of "falsely made and forged securities, to wit, fraudulent New York State Motor Vehicle Registration Certificates, evidencing ownership or interest in Motor Vehicles, knowing the same to have been falsely made and forged."

The statute, 18 U.S.C. § 2314, imposes punishment for a felony, regardless of the amount involved, on anyone who

> with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited.

The word "securities" for purposes of the stolen property chapter of the Criminal Code is broadly defined in 18 U.S.C. § 2311 to include any "certificate of interest in property" or "instrument or document or writing evidencing ownership of goods, wares, and merchandise." The complete definition reads as follows:

> "Securities" includes any note, stock certificate, bond, debenture, check,

draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing;

Defendant nevertheless argues that the definition of "securities" should be construed to exclude New York Motor Vehicle Registration Certificates because (1) the legislative history supports a narrow interpretation, (2) the statute has been construed narrowly with respect to other portions of the definition, (3) federal punishment of the offense would duplicate or interfere with state law, (4) a registration certificate is not a certificate of title under New York law, and (5) the penalty for interstate transportation of a security is out of proportion to the crime involved.

None of these reasons is persuasive.

1. The interstate transportation of stolen motor vehicles was first forbidden by the Dyer Act, now 18 U.S.C. § 2312, in 1919. It may be noted that the offense was made a felony regardless of the value of the stolen vehicle. The prohibition against interstate transportation of stolen property was extended in 1934 to other types of property, including securities, by the National Stolen Property Act, now the first paragraph

of 18 U.S.C. § 2314, but the federal crime was limited to transportation of property valued at $5,000 or more, a limitation which still appears in the first paragraph of Section 2314. The 1934 act defined "securities" in substantially the present terms as including any "certificate of interest in property, tangible or intangible." In 1939, the National Stolen Property Act was amended to include transportation of falsely made or forged securities and tax stamps, as well as those which were stolen. The requirement of a $5,000 value with respect to stolen property was not included with respect to forged securities, which are now covered by the third paragraph of 18 U.S.C. § 2314. Defendant points out that the minimum value provision in the original House bill was eliminated because of a statement by the Attorney General that

> criminals who engage in forging or counterfeiting certificates do not ordinarily subject themselves to the hazards involved in such a nefarious undertaking, except for the purpose of multiplying the forged certificates on a large scale,

S.Rep.No.674, 76th Cong., 1st Sess. 2 (1939), and argues that it is therefore only mass-produced forgeries which the statute was intended to punish.

■ Although defendant's argument shows careful scholarship, it does not provide a basis for ignoring the clear definition of "securities" in 18 U.S.C. § 2311, or the absence of a value requirement in Section 2314. Assuming, *arguendo,* that printed registration certificates are not mass-produced, Congress did not limit the prohibition against interstate transportation of forged or "altered" securities to those which are mass-produced.

2. The precedents for narrow interpretations on which defendant relies relate to sales slips for credit card purchases. These were held not to be securities in Beam v. United States, 364 F.2d 756 (6th Cir. 1966), and Merrill v. United States, 338 F.2d 763 (5th Cir. 1964),

cert. denied, 386 U.S. 994, 87 S.Ct. 1311, 18 L.Ed.2d 340 (1967). In the *Beam* case, the court said (364 F.2d at p. 759):

> In addition, we feel that the definition in § 2311 should be read *in pari materia*. So read, every defining term (including "evidence of indebtedness" in one of its meanings) is that of an instrument which has value in itself, is capable of being negotiated, and hence is of value to a forger or a thief. A sales slip such as is involved in this indictment has no such value.

A New York registration certificate may have value to a forger or a thief. It is therefore different from the credit sales invoices which were signed by the defendant in the *Beam* case.

In the *Merrill* case, 338 F.2d at 769, the court pointed out that a credit sale invoice was not expressly included in the definition of "securities" in Section 2311 unless it was "evidence of indebtedness." Again the court pointed out that "securities" referred in the definition to instruments in themselves of value to a thief, and that a credit sale invoice did not have such value.

The differences between the carbon copy of a sales slip and a registration certificate are so substantial as to deprive the *Beam* and *Merrill* cases of any pertinence here. In any event, contrary and preferable rulings have been made in other courts of appeals. A credit card was held to be within Section 2314 in Lewis v. United States, 301 F.2d 787 (10th Cir. 1962), because it could be used to make a false charge slip or evidence of indebtedness. A credit invoice was interpreted as being an "evidence of indebtedness" in Ingling v. United States, 303 F.2d 302 (9th Cir. 1962). While the *Lewis* and *Ingling* cases arose after guilty pleas, they are relevant to show that the indictment charges an offense.

■■ 3. It is true that the National Stolen Property Act was not intended to usurp state criminal jurisdiction, but this does not advance defendant's cause. The Supreme Court has stated that Congress, in enacting the act, intended to come

> to the aid of the states in detecting and punishing criminals whose offenses are complete under state law, but who utilize the channels of interstate commerce to make a successful get away and thus make the state's detecting and punitive processes impotent.

United States v. Sheridan, 329 U.S. 379, 384, 67 S.Ct. 332, 335, 91 L.Ed. 359 (1946); see also Cooper v. North Jersey Trust Co., 226 F.Supp. 972, 979 (S.D.N.Y.1964).

■ 4. It is also true that a registration certificate is not a certificate of ownership under New York law. Paglia v. State, 278 App.Div. 281, 105 N.Y.S.2d 597 (4th Dept. 1951), aff'd, 303 N.Y. 821, 104 N.E.2d 369 (1952). Nevertheless, a registration certificate is a "certificate of interest in property" and a "writing evidencing ownership." The certificate was described in the *Paglia* case (105 N.Y.S.2d 602) as being "prima facie evidence of ownership." See also People v. Simon, 178 Misc. 49, 33 N.Y. S.2d 14 (Sup.Ct.1942). The holding in the *Paglia* case was simply that a car dealer could not hold the state liable for negligence in issuing a registration certificate to a thief who presented a stolen "certificate of sale." The dealer bought the car on the basis of the new registration certificate, but the court found contributory negligence by the dealer in not getting adequate identification from the man who offered him the car.

■■ 5. There is no significance to the fact that the federal statute imposes a higher penalty for transportation of an altered certificate than New York law imposes for the alteration itself, which is only a misdemeanor if it is "under circumstances not amounting to forgery." Vehicle and Traffic Law, § 392 McKinney's Consol.Laws, c. 71. By providing for a penalty of imprisonment of "not more than ten years," the feder-

al statute permits the sentencing judge to determine the sentence in the light of the character of the offense. There is no requirement that Congress be guided by state policy in fixing the penalty for a federal offense.

The court has not relied on United States v. Nasse, 432 F.2d 1293 (7th Cir. 1970), which the government cites, because that case involved an indictment for conspiracy to transport both stolen motor vehicles and spurious Illinois and Indiana title documents, and the court's opinion did not specifically deal with the characterization of the forged certificates as securities.

It is ordered that the motion, to dismiss be denied.