**UNITED STATES of America,
Appellee,**

v.

**Arthur CANTON, Appellant.**

**No. 241, Docket 72–1794.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1972.

Decided Dec. 19, 1972.

John C. Corbett, Brooklyn, N. Y., for appellant.

L. Kevin Sheridan, Asst. U. S. Atty., Eastern District of New York (Robert A. Morse, U. S. Atty., Eastern District of New York, on the brief), for appellee.

Before FRIENDLY, Chief Judge, and MEDINA and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Following a jury trial in the Eastern District of New York. Arthur Canton was convicted on nine counts of transporting falsely made and forged securities across state lines in violation of 18

U.S.C. § 2314,[1] and on one count of conspiring to do so, 18 U.S.C. § 371. For the purpose of giving color of title to purchasers of stolen cars, the appellant had paid one Cynthia Wharton, on at least nine occasions, to prepare fraudulent New York state motor vehicle registration certificates and take them from New York to New Jersey, where they were exchanged for New Jersey state registration certificates.

■ In prosecuting Canton, the Government relied on the assumption that a New York motor vehicle registration is either "a certificate of interest in property" or a document or writing "evidencing ownership of goods, wares, and merchandise" and, therefore, a "security" within the definition of that word as set forth in 18 U.S.C. § 2311.[2] We conclude that it is neither of these nor is it included within any of the other instruments representing interests in property, mentioned in the statute.

A "certificate of interest" in property is a specific type of instrument issued to participants in joint ventures as evidence of the extent of their participation.

"These certificates are like common shares in that they represent an interest in property not measured in dollars; and they may have a 'par' value, just as a common share usually has."

Empire Trust Co. v. Hoey, 103 F.2d 430, 432 (2 Cir. 1939). Its meaning does not encompass a motor vehicle registration certificate, the purpose of which is to show that the motor vehicle may rightfully be operated on public highways.

With respect to the assertion that it is a document or writing "evidencing ownership of goods, wares, and merchandise" it is necessary first to consider how it is used and regarded for legal purpose in the State of New York and then relate it to the wording, purpose and application of 18 U.S.C. §§ 2311 and 2314.

The State of New York, prior to its adoption of the Uniform Vehicle Certificate of Title Act,[3] which became effective July 1, 1972, did not issue certificates of title for motor vehicles; and a registration certificate was the only officially issued document which stated the name of the presumed owner. The placing of the name on the registration, however, created only a rebuttable presumption that the person named was the actual owner of the car. The registration did not, in and of itself, constitute a certificate of title, Ferris v. Sterling, 214 N.Y. 249, 108 N.E. 406 (1915); Bogorad v. Dix, 176 App.Div. 774, 162 N.Y.S. 992 (1917); Pugh v. Hartford Insurance Group, 68 Misc.2d 1014, 328 N.Y.S.2d 872 (Sup.Ct.1972). It has been

1. The pertinent portion of § 2314 reads as follows:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited. . . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. Section 2311 defines "securities" as follows:

" 'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title or interest in or to goods, wares, and merchandise; or in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing . . . ."

3. 1971 McKinney's Session Laws of New York, Ch. 1134; N.Y.Vehicle and Traffic Law § 2101 et seq.

explicitly recognized "that the certificate of registration was never intended by the [New York] legislature as a certificate of title," Paglia v. State, 278 App.Div. 281, 105 N.Y.S.2d 597, 600; (1951), aff'd 303 N.Y. 821, 104 N.E.2d 369 (1952), and the "transfer of registration is not necessary to effect transfer of title in an automobile," Pugh v. Hartford Insurance Group, *supra*, 328 N.Y.S.2d at 875.

As the record in the present case indicates, a New York certificate of registration was not sufficient alone to obtain a certificate of motor vehicle registration in New Jersey. Cynthia Wharton, appellant's accomplice, was required to submit in addition tracings of each car's motor vehicle identification number.

Moreover, the adoption of the uniform Vehicle Certificate of Title Act in addition to the existing statutes on motor vehicle registration fairly implies that the legislature did not consider a certificate of registration to be the equivalent of a certificate of title as evidence of ownership.

The applicable federal statutes, 18 U.S.C. §§ 2311 and 2314, had their primordial roots in the National Motor Vehicle Theft (Dyer) Act, 41 Stat. 324 (1919), now codified at 18 U.S.C. §§ 2312, 2313. Thereafter in 1934 Congress enacted the National Stolen Property Act, 48 Stat. 794, "to extend the provisions of the National Motor Vehicle Theft Act to other stolen property," S. Rep. No. 538, 73d Cong., 2d Sess. 1 (1934); H.R.Rep.No.1462, 73d Cong., 2d Sess. 1 (1934); 78 Cong.Rec. 5082, 6981, 8136 (1934). This Act introduced the definition of securities now codified at 18 U.S.C. § 2311 and, *inter alia*, made it a federal crime to transport stolen securities worth $5,000 or more in interstate commerce. As originally proposed the definition of "securities" included bills of sale, but those instruments were deleted on the floor of the Senate upon the recommendation of the Senate Judiciary Committee. S.Rep.No.538, *supra*,

at 1; 78 Cong.Rec. 6981 (1934). It appears also that the establishment of a $5,000 minimum jurisdictional amount was a deliberate effort to avoid overfederalizing state crimes. S.Rep.No. 538, *supra*, at 2; H.R.Rep.No.1462, *supra*, at 2 (1934).

In 1939 Congress again extended the Act, 53 Stat. 1178, by making its provisions applicable to the interstate transportation of falsely made, forged, altered, or counterfeited securities, H.R. Rep.No.422, 76th Cong., 1st Sess. 1 (1939); and defined the value of securities as "the face, par, or market value, whichever is the greatest." As originally proposed, and initially passed by the House of Representatives, the bill required a minimum value of forged securities in the amount of $5,000 as a jurisdictional requirement; but, upon the recommendation of the Attorney General and "several large issuers of securities," the Senate Judiciary Committee advised the deletion of the monetary limitation for counterfeit securities. S.Rep.No. 674, 76th Cong., 1st Sess. 1 (1939), and the law was ultimately enacted without it. See also S.Rep. #674, *supra*, at 2, Committee's Report; and debate, Senators King and O'Mahoney, 84 Cong.Rec. 9411–9412 (1939).

While the history of these statutes discloses no legislative debates or committee discussions or reports which expressly state whether or not a "security," for the purpose of § 2314, in the form of an "instrument or document or writing evidencing ownership of goods, wares, and merchandise" was intended to *include a writing which, at best,* shows only a prima facie ownership in a person named and which does not stand for an obligation for the payment of money or represent a particular interest in goods or property, and has no value in itself, nevertheless, there are several things in the history and wording of the statute which show that such a writing (which would include New York's motor vehicle certificate of registration) was not intended to be considered as a security within the meaning of the statute.

In the first place an official tax list, or a census report, or a sales slip, or an ordinary receipt, or a copy of an invoice are not securities even though they are writings which may have evidentiary use on an issue of ownership of an automobile described as delivered to or belonging to the party in question. In the generally accepted commercial sense, "securities" are defined as "instruments giving to their legal holders rights to money or other property." The Columbia Encyclopedia (3d ed. 1968). They are therefore instruments which have intrinsic value and are recognized and used as such in the regular channels of commerce.

All of the instruments mentioned in the definition of securities, § 2311, if regarded in their strict and formal meanings, fall within this generally accepted definition of "security." There is nothing to indicate that Congress intended to have the list of specifically named instruments and documents construed in their broadest possible senses, rather, all were intended to be "included" within the scope and meaning of "security" in its usual financial or commercial sense. The catch-all, "or, in general, any instrument commonly known as a 'security', " confirms this as an endeavor to cover any instrument inadvertently omitted from the list of those specifically named, but still one within the commonly accepted meaning of a security.

It is also significant that the words "bill of sale," were deleted from the bill prior to its passage. Unlike the instruments specifically listed in § 2311 a bill of sale has no intrinsic value as a primary obligation to pay money or turn over property, and it would therefore have been inconsistent and inapposite to include it as a security.

There is also the definition of value in § 2311. While a value of $5,000 is no longer necessary for jurisdictional purposes in the federal prosecution of interstate transportation of securities, it was necessary when the predecessor of § 2314 was enacted in 1934 and the definition of securities was also made into law. "Value" was and still is defined as "the face, par, or market value . . . . " A New York motor vehicle registration certificate has none. There is no market for registration certificates in the lawful channels of commerce.

These considerations lead to the conclusion that Congress did not intend to include within the meaning of the term "securities", an instrument such as the New York Motor Vehicle Registration Certificate.

In United States v. Jones, 450 F.2d 523 (5 Cir. 1971), which dealt with the question of whether or not a forged airline ticket was a "security" for the purpose of § 2314 as an "evidence of indebtedness" under § 2311, Judge Tuttle said, "It is to be noted that 'Securities' is defined with great particularity and that except for 'evidence of indebtedness' each of the other documents listed in Section 2311 has a specific and commercially-cognizable referent, . . . Congress, in enacting § 2311 clearly manifested its intention to limit the meaning of security to specific commercial instruments and to those documents which commonly pass as securities." He quoted from Merrill v. United States, 338 F.2d 763, 769 (5 Cir. 1964), concerning a stolen credit card and forged credit sales ticket, in which it was said, "Congress employed the term 'securities' in the usual commercial sense, to refer to instruments in themselves valuable to a thief." Judge Tuttle went on to say, "It does not follow from that proposition that anything having value is therefore a security, for such an approach reads out of the Merrill definition the words 'usual commercial sense' and 'instruments.' " "Since airline tickets do not establish a primary obligation to pay money, they are not evidences of indebtedness. . . . [W]e conclude that they cannot be treated as securities for purposes of § 2314." United States v. Jones, *supra*, at 525.

Likewise, credit sales invoices, which are sales-slips which a holder of

an oil company credit card are required to sign in making a purchase, are not securities for the purposes of § 2311 and § 2314, Beam v. United States, 364 F.2d 756, 759 (6 Cir. 1966); Barack v. United States, 317 F.2d 619 (9 Cir. 1963).

■ In the light of New York state's own interpretation of the legal attributes of its motor vehicle certificate of registration and the intention of Congress to give to the word "securities" its usual and customary meaning in finance and commerce, we see no justification for giving the broader interpretation to the words "instrument or document or writing evidencing ownership of goods, wares, and merchandise . . ." that the Government seeks. If there were any doubt or any conflict in interpretation of the statutes, it must be resolved in favor of the appellant, Prussian v. United States, 282 U.S. 675, 677, 51 S.Ct. 223, 75 L.Ed. 610 (1931); McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931).

The judgments of conviction are reversed and the case is remanded to the district court with the direction that the indictment against the appellant under 18 U.S.C. § 2314 and § 371 be dismissed.