UNITED STATES of America,
Appellant,

v.

Staci SPEIDEL, a/k/a Rosemary Rojas, and Ervin Everett Wright, Appellees.

No. 77–1175.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1977.

Decided Sept. 8, 1977.

Rehearing Denied Oct. 5, 1977.

Patty Ellen Merkamp, Atty., U. S. Dept. of Justice, Washington, D. C., (argued), for appellant. Daniel E. Wherry, U. S. Atty., and Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb. and Jerome M. Feit and Patty Ellen Merkamp, Attys., U. S. Dept. of Justice, Washington, D. C., on brief, for appellant.

Rebuttal was made by Patty Ellen Merkamp.

Timothy J. Cuddigan, Marks, Clare, Hopkins & Rauth, Omaha, Neb., for appellee, Staci Speidel, etc.

John J. Respeliers, Respeliers & DiMari, Omaha, Neb., for appellee, Ervin Everett Wright.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

Under federal law, it is a criminal offense for an individual, with unlawful or fraudulent intent, to transport falsely made or forged securities in interstate commerce. 18 U.S.C. § 2314 (1970). The limited issue in this case is whether or not the quitclaim deeds allegedly transported in interstate commerce by defendants Staci Speidel and Ervin Wright constitute "securities" under the broad statutory definition of that term in 18 U.S.C. § 2311. The District Court concluded that quitclaim deeds are not securities and dismissed the indictment that charged defendants with violating 18 U.S.C. § 2314. *United States v. Wright,* 425 F.Supp. 1262 (D.Neb.1977). The Government, pursuant to 18 U.S.C. § 3731, appealed. We reverse.

The definitional section, 18 U.S.C. § 2311, provides in pertinent part:

"Securities" includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; *certificate of interest in property, tangible or intangible* ; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for,

warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing; (Emphasis added.)

We note at the outset that "securities" is defined to *include* the several categories of documents named. This is similar to the wording, also in § 2311, used to define "motor vehicle" and "tax stamp". By contrast, the same section defines some other types of property with the word *means*. Using the plain and ordinary meaning of these terms, it is apparent that the definition of securities is intended to be expansive. *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 79 L.Ed. 232 (1934). The legislative history of this statute reinforces this construction.[1] During the course of enactment, the wording of the bill's definition of securities was changed from "means" to "includes". H.R.Rep. No. 1462, 73d Cong., 2d Sess. (1934); 78 Cong. Rec. 8136 (1934).

■ We also note, as did the District Court, that the definition of securities in this context is broader than that under the Securities and Exchange Act. 15 U.S.C. § 77b(1). Under that act, the words "certificate of interest in property, tangible or tangible", are omitted. The Government urges us to hold that this phrase, as it is used in § 2311, includes quitclaim deeds.

■ Despite clear indications that Congress intended a broad definition of securities in this context, Wright and Speidel argue that "securities" should be limited to documents valuable in themselves. Obviously, a statute directed at the interstate

transportation with fraudulent intent of forged documents assumes that they may be used as fraudulent representations of some valuable property right. It is the right or interest apparently represented that has value rather than the document itself.[2]

■ Speidel and Wright also contend that the definition includes only those documents normally considered securities by the commercial and financial community. They cite two cases dealing with the "evidence of indebtedness" part of the § 2311 definition: *United States v. Jones*, 450 F.2d 523 (5th Cir. 1971), involving airline tickets, and *Merrill v. United States*, 338 F.2d 763 (5th Cir. 1964), involving oil company credit card sales invoices. By contrast, the present case involves quitclaim deeds, which are commonly used in commercial real estate transactions, including loans secured by real estate. We do not believe that Congress intended or the law requires the restrictive reading urged by defendants.[3]

■ While criminal statutes traditionally are construed strictly, the salutary purposes of preventing fraud and the use of forged documents and instruments in perpetrating frauds are also entitled to consideration. As expressed in *U. S. v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), it is appropriate to consider the purpose of the act under review and to ascribe a meaning to its words consistent with the context in which they appear. The rule of strict construction of criminal statutes does not mean that every criminal statute should be given the narrowest possible meaning, in derogation of the legislative purpose.[4]

1. The definitions of "securities", using the word *includes*, and "money", using the word *means*, were added to present § 2311 as part of the same act. National Stolen Property Act, Pub.L.No. 73–246, 48 Stat. 794.

2. *Cf., United States v. Sparrow*, 470 F.2d 885, 888–89, (10th Cir. 1972), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397 (1973) (lost securities bonds which had no present intrinsic value but became valuable on happening of a contingency were securities under § 2311).

3. Speidel urges us to use the definition of "certificate of interest" in property stated in *United States v. Canton*, 470 F.2d 861, 862 (2d Cir. 1972). *Canton* apparently defined the phrase "certificate of interest or participation in any profit-sharing agreement," etc., rather than "certificate of interest in property, tangible or intangible." The concrete issue there was whether a New York motor vehicle registration certificate fell within the ambit of the statute.

4. Strict construction of criminal statutes is based on the need to provide fair warning of what conduct is criminal and to insure that the

Here, Congress has addressed the problem of the transportation and use of stolen or forged certificates and, without ambiguity, has used language expansively and broadly defining securities. The definition under review includes "certificates of interest in property, tangible or intangible." Are quitclaim deeds such certificates? We think so.

 The deeds incorporated in the indictments of Speidel and Wright purport to quitclaim the grantors' interest in land in Pottawatomie County, Iowa. Under Iowa law a quitclaim is as effective to transfer title to realty as any other form of conveyance. *Swab v. Appanoose Country Club,* 203 N.W.2d 318, 319 (Iowa, 1972). *See also* Iowa Code § 558.19 (1975).

 A quitclaim deed is an express conveyance of whatever interest and title the grantor might have. It could be none or all of the title. Conventionally, quitclaim deeds are used to convey minor interests in land, to clear titles to land and occasionally to convey full title that is encumbered by liens and defects. Thus, while a quitclaim deed warrants no specific interest in property, it can hardly be said that it certifies no interest in property. On the whole, one offering a quitclaim deed may be viewed as certifying a conveyance of all of his interest in the property, whatever that interest might be. When a quitclaim deed is executed to clear title to property or to satisfy title examiners, it certainly is thought that the grantor possesses some type of interest, encumbrance, or cloud upon the title and that the quitclaim deed will convey the interest necessary to remove that cloud or defect.

 Given the nature and use of quitclaim deeds in real estate transactions, we think it accurate to say that a quitclaim deed certifies the grantee as having the real estate interest previously owned by the grantor. Therefore, in our view, the District Court erred in concluding that "the deed in question does not certify an interest in property, as required by [§ 2311], but rather certifies no interest in certain property * * *." 425 F.Supp. at 1264.

The judgment of the District Court is reversed. The cause is remanded for further proceedings consistent with this opinion.

legislature rather than the courts define criminal behavior. *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974); *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Certainly, no one should be surprised that the transportation with fraudulent intent of forged quitclaim deeds could be proscribed. The pervasive and broad-ranging definition of securities set forth in § 2311 demonstrates a Congressional intent to cover almost all forms and types of stolen or forged certificates representing intangible or tangible property interests.