UNITED STATES of America, Appellee,

v.

Alvin Charles SUE, Appellant.

No. 78–1321.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 25, 1978.
Decided Nov. 1, 1978.

Jack T. Lassiter, McArthur & Lassiter, Little Rock, Ark., for appellant.

W. H. Dillahunty, U. S. Atty., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Alvin Charles Sue was convicted of three counts of making false statements to federally insured credit associations to obtain monies in violation of 18 U.S.C. § 1014. He was sentenced to imprisonment for one year and fined $5,000 on Count 1. On Counts 2 and 3 he was sentenced to imprisonment for two years, the sentences to run consecutive to the sentence imposed on Count 1 and concurrent with each other. Execution of the sentences on Counts 2 and 3 was suspended and appellant was placed on probation for two years.

Sue alleges on appeal that the trial court erred in (1) overruling his pretrial motion to consolidate Counts 2 and 3 of his indictment; (2) refusing to give his requested instruction to the jury that Counts 2 and 3 of the indictment alleged acts constituting a single criminal offense; and (3) overruling his objection to the admissibility of portions of a transcript of his testimony in a civil action. He seeks vacation of his conviction on all three counts and remand for a new trial. We affirm in part and reverse in part.

### I. Multiplicity in the Indictment

■ Sue contends that the indictment was multiplicious.[1] We agree. Counts 2 and 3 of the indictment charged Sue with making false statements in different paragraphs of a single security agreement. We

adopt the reasoning of *United States v. Sahley,* 526 F.2d 913, 918 (5th Cir. 1976), where the court held that the making of a number of false statements to a lending institution in a single document constitutes only one criminal violation under 18 U.S.C. § 1014.

■ The proper remedy for multiplicity is a difficult question. At the trial stage, election of counts by the prosecutor or an appropriate instruction to the jury are possible remedies. *United States v. Ketchum,* 320 F.2d 3, 8 (2d Cir.), *cert. denied,* 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963). *Cf. Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). Review of the failure of a trial court to apply either remedy in the case of a multiplicious indictment has generally been in terms of whether the defendant sustained any prejudice. *United States v. Hearod,* 499 F.2d 1003, 1005 (5th Cir. 1974); *United States v. DeStafano,* 429 F.2d 344, 348 (2d Cir. 1970), *cert. denied,* 402 U.S. 972, 91 S.Ct. 1656, 29 L.Ed.2d 136 (1971); *Wangrow v. United States,* 399 U.S. 106, 112 (8th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968).

■ There are two principal sources of prejudice. The source relied upon by Sue is that "the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes." *United States v. Ketchum, supra,* 320 F.2d at 8, *quoting from United States v. Mamber,* 127 F.Supp. 925, 927 (D.Mass.1955). *See United States v. Hearod, supra,* 499 F.2d at 1005. The theory is that the jury's deliberations as to *all* counts (not just the multiplicious counts) may be tainted by the multiplicity. Sue argues that the appearance that he committed two violations instead of one bolstered the government's proof of his motive to knowingly make false statements in order to procure the loan. We disagree. The

1. A multiplicious indictment is one charging the same offense in more than one count. *Gerberding v. United States,* 471 F.2d 55, 58 (8th Cir. 1973); 1 C. Wright, Federal Practice and Procedure § 145, at 336 (1969).

evidence of Sue's motive [2] was strong. As a consequence, the effect on the jury of charging Sue with three counts rather than two could only have been negligible.

Count 1 of the indictment charged that Sue represented to the White River Production Credit Association (PCA) that certain of his Arkansas companies were the absolute owners of certified nato, soybeans and rice, whereas Sue knew that the certified nato and soybeans were subject to encumbrances, liens and security interests granted to the First National Bank of Memphis and the equity in the rice was subject to an encumbrance, lien and security interest in favor of the Main Bank of Houston. Count 2 alleged that Sue falsely stated to the First National Bank of Newport that one of his companies was the absolute owner of 53 pieces of farm equipment, whereas Sue knew that the farm equipment was subject to liens, security interests and encumbrances granted to the Main Bank of Houston, the Greater Houston Bank, and the Northshore Bank of Houston. Count 3 alleged that Sue falsely stated to the First National Bank of Newport that the same 53 pieces of equipment referred to in Count 2 were free from filed financing statements.

The government established beyond a reasonable doubt the prior pledging of the assets put up as collateral for the loans from the PCA and the First National Bank of Newport. The government also offered strong evidence that Sue knowingly made false representations to the lending institutions with the intent of inducing them to loan him money. The evidence disclosed that Sue negotiated and put up the collateral for the loans with the PCA and the First National Bank of Newport. He had likewise participated in negotiations whereby the same machinery and crops put up as collateral for the later loans had been made collateral for the prior loans from the First National Bank of Memphis, the Main Bank of Houston, the Greater Houston Bank, and the Northshore Bank of Houston. In fact, Sue specifically described in detail to the loan officer of the Main Bank the crops and equipment to be put up as collateral on the earlier loan. Finally, and most importantly, one of Sue's employees testified that during the time he was negotiating the loans from the PCA and the First National Bank of Newport, Sue intentionally concealed from his attorney, Mr. Hout, the fact that the rice crop was already collateral for another loan.[3]

The foregoing is convincing evidence that Sue knew of the double collateralization of the assets. There is likewise strong evidence that Sue acted with the intent to induce the lending institutions to loan him money. Two employees testified that at the time Sue made the loans in question, his companies were experiencing severe financial problems. Sue himself detailed the difficulty he was having securing adequate financing.

Because of the nature and extent of the foregoing evidence, even though the indictment was multiplicious, "[t]here was no threat of generating an adverse psychological effect on the jury," *United States v. Hearod, supra,* 499 F.2d at 1005, and reversal of the judgment on all counts, as Sue requests, is not called for.

█ There remains the second source of prejudice caused by a multiplicious indictment. "The principal danger raised by a multiplicious indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Hearod, supra,* 499 F.2d at 1005. 1 C. Wright, Federal Practice and Proce-

---

**2.** In order to make a case of violation of section 1014, the government must prove that the defendant acted with knowledge that the statement was false and that the statement was made for the purpose of influencing the action of the lending institution. *United States v. Cleary,* 565 F.2d 43, 46 (2d Cir. 1977); *United States v. Kennedy,* 564 F.2d 1329, 1340 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct.

1526, 55 L.Ed.2d 541 (1978); *United States v. Lentz,* 524 F.2d 69, 71 (5th Cir. 1975).

**3.** Alphonse Sciba testified that:
 He [Mr. Sue] told me—and it was a very short interim period of time—that there was no need for Mr. Hout to know that the Grubbs operation was in NYTCO [an outside warehousing company].

dure § 145, at 336 (1969). As we noted above, Sue was sentenced on Counts 2 and 3 to imprisonment for two years, the sentences to run consecutive to the sentence imposed on Count 1 and concurrent with each other. Execution of the sentences on Counts 2 and 3 was suspended and appellant placed on probation for two years.

We hold that the imposition of concurrent sentences was in error, and order the vacation of one of those concurrent sentences. Because of the similarity of Counts 2 and 3, and because execution of the sentences imposed on Counts 2 and 3 was suspended, we find there is no need for resentencing. *United States v. Easom,* 569 F.2d 457, 459 (8th Cir. 1978).

II. *Admission of Portions of Transcript of Sue's Testimony in a Civil Action*

■ The government introduced portions of a transcript of Sue's testimony in a civil proceeding in the United States District Court for the Western District of Tennessee styled *Nytco Services, Inc. v. Hurley's Grain Elevator Co. et al.,* 422 F.Supp. 114. Sue contends that that civil action was an integral part of the bankruptcy proceedings involving his assets, and that testimony from that action was not admissible in a criminal proceeding under the provisions of 11 U.S.C. § 25(a)(10).

Sue's argument lacks merit for two reasons. First, we decline to extend the protection afforded a bankrupt under 11 U.S.C. § 25(a)(10) to Sue's voluntary testimony in a separate civil proceeding. *See United States v. Seiffert,* 501 F.2d 974, 980–81 (5th Cir. 1974); *United States v. Castellana,* 349 F.2d 264, 273–74 (2d Cir. 1965), *cert. denied,* 383 U.S. 928, 86 S.Ct. 934, 15 L.Ed.2d 847 (1966). Second, Sue has failed to show how the admission of the testimony, even if erroneous, was prejudicial to him.

One of the concurrent sentences imposed on Counts 2 and 3 is ordered vacated. In all other respects, the judgment is affirmed.