**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond W. ZWEGO, Jr.,
Defendant-Appellant.**

No. 80–1008.

United States Court of Appeals,
Tenth Circuit.

Submitted Dec. 1, 1980.

Decided June 9, 1981.

Rehearing Denied Sept. 22, 1981.

Paul Anthony White, Gladstone, Mo., for defendant-appellant.

James P. Buchele, U. S. Atty., Douglas B. Comer, Asst. U. S. Atty., Kansas City, Kan., for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLO-WAY and McWILLIAMS, Circuit Judges.

SETH, Chief Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). This cause is therefore ordered submitted without oral argument.

Defendant-appellant Zwego was charged and convicted of knowingly making material false statements in connection with two applications for loans to a federally insured bank in violation of 18 U.S.C. § 1014, and interstate transportation of a falsely made and forged security in violation of 18 U.S.C. §§ 2311 and 2314.

Appellant telephoned the Westgate State Bank located in Kansas City, Kansas and placed two applications for automobile loans on behalf of two "customers," Mr. Robert Helling and Mr. George Fine. The information that appellant supplied contained false statements regarding the addresses, places of employment, social security numbers, and telephone numbers of these individuals. In addition, Mr. Fine and Mr. Helling did not authorize such applications nor were they ever customers of appellant's business, as represented by appellant to the Bank. The Bank employee transcribed this false information onto "customer statement" forms and submitted both documents for approval to the Bank's vice president. The information was found to be false and the loans were not made.

Appellant was also convicted of interstate transportation of a falsely made and forged security. Appellant had received on consignment a 1977 Dodge van, the title and ownership of which was registered in the name of Jacpad Corp. Financial Service, Inc. with the Kansas Motor Vehicle Division. Appellant executed a forged and falsely notarized application for a duplicate motor vehicle title for this van and sent it from Kansas City, Missouri to the Kansas Department of Revenue Office in Topeka, Kansas without the knowledge or authorization of Jacpad, the registered owner. On the basis of this notarized application the Kansas Department of Revenue issued a duplicate title for the vehicle. Appellant contends that the trial court erred in its determination that the forged and falsely notarized application for a duplicate motor vehicle title was a "security" within the meaning of 18 U.S.C. §§ 2311 and 2314. The term "security" has been given an expansive definition in 18 U.S.C. § 2311 to include any "instrument or document or writing evidencing ownership of goods, wares, and merchandise."

The pervasive and broad-ranging definition of securities set forth in section 2311 demonstrates the Congressional intent that the term security should be construed

broadly and beyond the usual commercial meaning of the term. *United States v. Jackson*, 576 F.2d 749 (8th Cir.); *United States v. Speidel*, 562 F.2d 1129 (8th Cir.); *United States v. Austin*, 462 F.2d 724 (10th Cir.).

A state certificate of title for a motor vehicle has been held to be a security under section 2311. *See United States v. Elliott*, 571 F.2d 880 (5th Cir.); *United States v. Dickson*, 462 F.2d 184 (4th Cir.). In *United States v. Sparrow*, 635 F.2d 794, this court implicitly held that a certificate of title is a security within the meaning of section 2311. We there concluded that the certificate as sent from Washington state was not forged or false in its execution.

In *United States v. Dickson*, 462 F.2d 184 (4th Cir.), the court held that a statement of source of title of a motor vehicle was a security within the definition of section 2311. A security can be an evidence of a right of ownership. "It is the right or interest apparently represented that has value rather than the document itself." *United States v. Speidel*, 562 F.2d 1129 (8th Cir.). In the present case the appellant forged an application for a duplicate certificate of title of a motor vehicle. The application does require a notarized statement that the signor owns the vehicle in question and requests a duplicate of true title. Therefore, the application presupposes that the signor is the owner of the vehicle. The clear implication of such document is that a valid title document exists but has been lost or stolen. Once the duplicate certificate of title is issued it has value as evidence of ownership of the vehicle. *Farmers Ins. Co., Inc. v. Schiller*, 226 Kan. 155, 597 P.2d 238.

■ Thus this forged application while not an actual certificate of title was clearly usable as an intermediate step in obtaining the actual certificate of title. Consequently, we find that the executed application for a duplicate title of a motor vehicle has value to a forger since it enables the possessor to obtain a valid title which evidences ownership. Given the nature and use of the application for duplicate title in motor vehicle transactions we think that an applica-

tion is a writing evidencing ownership in goods for purposes of section 2311. Thus we agree with the district court that it is indeed a security within the meaning of section 2311.

Appellant also contends that his oral statements to the Bank employee did not constitute an "application" and thus is not an act proscribed by 18 U.S.C. § 1014.

Section 1014 makes it a crime to knowingly make false statements as to a material fact in an application for a loan for the purpose of influencing the bank to make the loan. The gist of the offense is the attempt to influence the bank to extend financing through the delivery or communication of false statements. *United States v. Kernodle*, 506 F.2d 1398 (4th Cir.). *See also United States v. Madsen*, 620 F.2d 233 (10th Cir.).

■ Appellant asserts that the information appellant provided the Bank was not transcribed onto an application form, but merely a "customer statement" form. However, for purposes of section 1014 it is not necessary that the application for the loan be formal. In *United States v. Hubbell*, No. 76–1119 (10th Cir.), we affirmed a section 1014 conviction based on an oral misrepresentation despite the absence of a formal loan application. We found "that the statute does not call for a formal application. Its terms apply to anyone who 'knowingly makes any false statement or report, ... upon any application.' No formalities are demanded." *Id.*

It is clear that both oral and written statements are covered by the statute. In addition, it is not necessary that the false statement be an "application" in and of itself. *See United States v. Sackett*, 598 F.2d 739 (2d Cir.); *United States v. Hubbell*, No. 76–1119 (10th Cir.).

In the present case we are presented with a streamlined automobile loan application procedure. The automobile dealer contacts the bank by telephone and provides certain identification and credit information concerning the prospective customer. The information is reduced to writing by the bank

employee onto a customer statement form. This "form" is then reviewed by the bank officer for approval for a loan or disapproval. No further "application" is necessary. The subsequent procedure if the loan is approved only involves the forwarding of the loan money by the bank to the automobile dealer. The customer, in return, executes a promissory note in favor of the dealership, and the dealer assigns the note to the bank.

■ In view of those facts we find that the providing of information regarding the customer's creditworthiness is in effect an "application" for a loan since the customer statement form is the only form required for obtaining the loan. Thus, appellant's false statements recorded on the customer statement form were clearly actionable under 18 U.S.C. § 1014.

Appellant also asserts that consecutive sentences for the violations of 18 U.S.C. § 1014 constitute double punishment for the same crime. He contends that his statements regarding the two loan applications constitute the same offense under section 1014.

■ The double jeopardy clause protects against multiple punishment for the same crime. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. The established test for determining the identity of offenses is whether "each count requires proof of a fact or element not required by the other." *Nolan v. United States*, 423 F.2d 1031 (10th Cir.); *Doherty v. United States*, 193 F.2d 487 (10th Cir.).

■ It has been held that making a number of false statements to a lending institution for a single loan constitutes one criminal violation under 18 U.S.C. § 1014. *United States v. Sue*, 586 F.2d 70 (8th Cir.); *United States v. Sahley*, 526 F.2d 913 (5th Cir.). However, in the present case we have a number of false statements involving two different loan applications. The proof presented concerning the falsity of the statements for each application was necessarily different since there were two applicants. Accordingly, it was permissible for the trial court to impose consecutive sentences for the convictions under section 1014.

Appellant next asserts that venue was improperly laid in Kansas City, Kansas. Venue questions raise "deep issues of public policy in the light of which legislation must be construed." *United States v. Johnson*, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. The provision for trial in the vicinity of the crime protects the accused against hardship and unfairness incident to a trial conducted in a remote place. *United States v. Jackson*, 482 F.2d 1167 (10th Cir.).

18 U.S.C. § 3237(a) provides that any offense against the United States begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

■ The proper venue for the offense of making false statements to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank. *United States v. Candella*, 487 F.2d 1223 (2d Cir.); *United States v. Ruehrup*, 333 F.2d 641 (7th Cir.).

Appellant's telephone call from Kansas City, Missouri to the Bank in Kansas City, Kansas, a contiguous city, transmitted false information regarding two bank applications for an automobile loan. Consequently, the crime of making false statements for a loan application was completed when the Bank employee transcribed the information telephonically received onto the application form. We, therefore, find that venue was properly laid in Kansas City, Kansas. Appellant's claim that there was a lack of sufficient evidence to convict him is without merit.

AFFIRMED.

HOLLOWAY, Circuit Judge, concurring and dissenting:

I am in agreement with the majority opinion except as to its affirmance of the

conviction on count 9 under 18 U.S.C. § 2314. I am unable to agree that the application for a duplicate title comes within the definition of "securities" under the criminal statutes and would reverse that conviction.

It is true that an actual certificate of title has been held to be a security within the definitions of 18 U.S.C. § 2311. Nevertheless I find no support in the cases for holding a mere application by a private party for a duplicate certificate to be a security. Indeed, *United States v. Canton,* 470 F.2d 861 (2d Cir.), rejected the Government's contention that a New York motor vehicle registration is a security by coming within the terms of "a certificate of interest in property" or a document or writing "evidencing ownership of goods, wares, and merchandise," as the definitions are extended by § 2311. The *Canton* opinion persuasively reviews the legislative history and concludes that such an instrument has no value in itself, pointing to the commercial sense within which the terms are used. *Id.* at 863–64.

Thus the holdings on automobile certificates of title or duplicate certificates of title themselves, *e. g., United States v. Elliott,* 571 F.2d 880, 908 (5th Cir.) (stressing that the certificate is prima facie evidence of ownership under Georgia law), do not support the Government here in the case of a mere application for a certificate.

The Kansas statutes do not recognize any independent function or commercial use for an application for a duplicate certificate. See K.S.A. 1975 §§ 8–135 and 8–139. The request merely contemplates issuance of the duplicate certificate. It is more like the blank share certificates which were held not to come within the statute in *United States v. Jackson,* 576 F.2d 749, 755–56 (8th Cir.), *cert. denied,* 439 U.S. 828, 858, 99 S.Ct. 102, 175, 58 L.Ed.2d 122, 167, the court there noting the rule of strict construction. The rule of strict construction of criminal statutes, *see Prussian v. United States,* 282 U.S. 675, 677, 51 S.Ct. 223, 224, 75 L.Ed. 610, has been applied by us to this offense. *United States v. Sparrow,* 635 F.2d 794, 796 (10th

Cir.) (en banc); *see also United States v. Canton, supra,* 470 F.2d at 865.

For these reasons I must respectfully dissent as to the affirmance of the conviction of count 9.