**UNITED STATES of America, Plaintiff,**

v.

**Michael David HUBBARD and James Ray Lyon, Defendants.**

**Crim. No. S–93–473 LKK.**

United States District Court,
E.D. California.

June 30, 1994.

Richard Bender, Asst. U.S. Atty., Sacramento, CA, for plaintiff.

Caro Marks, Asst. Federal Defender, Sacramento, CA, for defendant Hubbard.

Dwight M. Samuel, Sacramento, CA, for defendant Lyon.

## ORDER

KARLTON, Chief Judge Emeritus.

Defendants are charged in an 11–count Indictment with conspiracy and transportation of forged and/or counterfeit securities pursuant to 18 U.S.C. § 2314.[1] Pending before the court is the defendants' motion to dismiss Counts Two through Eleven of the Indictment.

The indictment alleges that the defendants, whose business is in Texas, submitted applications for duplicate automobile titles to the California Department of Motor Vehicles ("DMV") which contained false representations as to ownership and forged signatures. It is further alleged that receipt of the duplicate titles enabled the defendants to sell cars they did not lawfully own.

The notion of a security is highly protean. *See* 1 Hazen, *The Law of Securities Regulation* § 1.5, pp. 22–24 (2d ed. 1990). Nonetheless, the defendants' motion is predicated on the assertion that however flexible the definition of a security might be, applications for duplicate titles to automobiles simply are not "securities."

Section 2311 of Title 18 provides a statutory exegesis on the term "security."[2] Not unreasonably, the parties turn to it in seeking resolution of the issue. They dispute the interpretation of the section, and whether applications for duplicate titles, as contrasted with actual certificates of title, fall within its terms. Section 2311, however, makes clear that the list of documents contained therein is meant to be illustrative rather than denotative.

The fact that a criminal statute is structured so as to illustrate but not define criminal conduct raises questions of due process. The Supreme Court has explained that certainty of the meaning of a penal statute is a requisite of the Due Process Clause.[3] *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct.

**1.** The statute makes it a felony, inter alia, to "with unlawful or fraudulent intent, transport[ ] in interstate or foreign commerce any falsely made, forged, altered or counterfeited securities." 18 U.S.C. § 2314.

**2.** " 'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate; valid or blank motor vehicle title; certificate of interest in proper-

ty, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing...." 18 U.S.C. § 2311.

**3.** The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty or property without due process of law...."

126, 127–28, 70 L.Ed. 322 (1926). As Chief Justice Marshall explained long ago,

> To determine that a case is within the intention of a [criminal] statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated...."

*United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 96, 5 L.Ed. 37 (1820). Simply said, in this country, unlike regimes such as the former Soviet Union, there are no crimes by analogy. *See Zschernig v. Miller,* 389 U.S. 429, 435 n. 6, 88 S.Ct. 664, 667–68, 19 L.Ed.2d 683 (1968).

Although it seems clear that a statute like section 2311 might raise serious constitutional concerns, its uncertainty is not dispositive of the matter at bar since it is section 2314 rather than section 2311 which defines the conduct denounced as criminal. Accordingly, the relationship between the two statutes is that if a charged document is listed in section 2311, it clearly is a security and thus satisfies section 2314; on the other hand, a document not specified in section 2311 may still be a security within section 2314, since the contents of section 2311 are illustrative only.

Nor is the fact that the term "security" is not defined in section 2314 necessarily dispositive. We are taught that "[w]here the constitutional requirement of definiteness is at stake, we have the further obligation to construe the statute, if that can be done consistent with the legislature's purpose, to avoid the shoals of vagueness." *Buckley v. Valeo,* 424 U.S. 1, 77–78, 96 S.Ct. 612, 662–63, 46 L.Ed.2d 659 (1976).

The obligation of providing a judicial gloss, however, presents its own constitutional problems, since construction of a criminal statute to include conduct not reasonably foreseeable from its text is itself a violation of due process. *Bouie v. Columbia,* 378 U.S. 347, 352–53, 84 S.Ct. 1697, 1701–02, 12 L.Ed.2d 894 (1964). As the Supreme Court has said, "judicial enlargement of a criminal Act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness." *Id.* (citing *Pierce v. United States,* 314 U.S. 306, 311, 62 S.Ct. 237, 239–40, 86 L.Ed. 226 (1941)).

The tension between the obligation to save a statute from vagueness by construction, and the due process limitation on retroactive construction of penal statutes, has been resolved in terms of whether the text of the statute gives fair warning that the conduct charged is unlawful. *Osborne v. Ohio,* 495 U.S. 103, 115, 110 S.Ct. 1691, 1699, 109 L.Ed.2d 98 (1990). The High Court has explained, "[o]ur cases, however, have long held that a statute as construed 'may be applied to conduct occurring prior to the construction,' provided such application affords fair warning to the defendan[t]." *Id.* (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 491 n. 7, 85 S.Ct. 1116, 1123 n. 7, 14 L.Ed.2d 22 (1965)).

From all the above, I conclude that the matter at bar potentially tenders two questions. First, the court must determine whether the term "securities" as found in 18 U.S.C. § 2314 may be construed to include applications to the California Department of Motor Vehicles for duplicate titles, and if so, whether the statute gives fair warning of such a construction.

The issue of whether an application for duplicate title is a security for purposes of section 2314 tenders an issue of statutory construction. Resolution, therefore, turns on "what scope Congress intended § 2314 to have." *Moskal v. United States,* 498 U.S. 103, 107, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990).

As with any issue of statutory interpretation, the first question which a district court must address is whether there is a binding construction of the statute. *Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal.1988). Neither the Supreme Court nor the Ninth Circuit has spoken to the matter at bar, and accordingly, the court must undertake its own explication employing the traditional methods of statutory construction. *Id.*

■ Analysis commences with application of the plain meaning rule, *see Connecticut Nat'l Bank v. Germain,* — U.S. —, —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); if the language of the statute is ambiguous, resort may be had to textual and extrinsic aids to construction. *Dodd v. John Hancock Mut. Life Ins. Co.,* 688 F.Supp. 564, 569 (E.D.Cal.1988).

■ I begin my plain meaning examination by consideration of section 2311, for as I explained above, no further inquiry is required if Congress has specified that applications for duplicate automobile titles are securities. In doing so, I apply the ordinary meaning of the words employed. *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985) ("[i]n construing a federal statute it is appropriate to assume that the ordinary meaning of the language that Congress employed 'accurately expresses the legislative purpose' ").

Examining section 2311 in light of the ordinary meaning of the words used strongly suggests that an application is not a "valid or blank motor vehicle title," if for no other reason other than it is a request for such a document.[4] For the same reason, an application is not, vel non, an "instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title or interest in or to goods, wares, and merchandise." Finally, as a matter of plain meaning, an application is not a "certificate of interest …

temporary or interim." [5] I conclude that as a matter of plain meaning, section 2311 does not specify applications for duplicate title as a security.

■ I next examine whether an application for a duplicate motor vehicle title is plainly a security without regard to the illustrative list contained in section 2311. Once again, as a matter of ordinary usage, I conclude that it is not. A security has been defined as "a written obligation, evidence, or document of ownership or creditorship (as a stock, bond, note, debenture, or certificate) giving the holder the right to demand and receive property not in his possession." Webster's Third New International Dictionary 2054.[6] Thus, as a matter of ordinary meaning, the term "security" refers to documents evidencing title. In California, the legislature has provided that the DMV provide title documents (colloquially known as "pink slip" because at one time they were in fact pink). Cal.Veh.Code § 4450.[7] The application for a duplicate seeks a duplicate pink slip, *see* Cal.Veh.Code § 4459,[8] and thus as a matter of ordinary usage, is not that document.

■ The Government argues, however, that "an application for a duplicate title functions as the equivalent of the title." Government's Opp'n at 3. In support, it cites to excerpts from a document apparently entitled, "[Vehicle] Registration Manual," and

---

4. Even before the amendment to section 2311 adding the phrase "valid or blank motor vehicle title" to the statute, it was established that a certificate of automobile title is a security under 18 U.S.C. § 2311. *United States v. Daly,* 716 F.2d 1499, 1508 (9th Cir.1983); *United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Dickson,* 462 F.2d 184 (4th Cir.), *cert. denied,* 409 U.S. 876, 93 S.Ct. 126, 34 L.Ed.2d 129 (1972); *United States v. Sparrow,* 635 F.2d 794 (10th Cir.1980).

5. The Government has filed the declaration of a DMV employee regarding certain state administrative practices relative to applications for duplicate title. *See* Rule Decl. Those administrative practices are irrelevant to the issue of whether the language Congress employed plainly includes such instruments. The effect of such practices are, however, considered later in the body of this opinion.

6. I turn to Webster's rather than Black's Law Dictionary because the issue here is ordinary, as contrasted with specialized, meaning. The fact that the term "security" has a legal history and its effect on construction of section 2311 is discussed later in this opinion.

7. The statute provides: "The department [of motor vehicles] upon registering a vehicle shall issue a certificate of ownership to the legal owner and a registration card to the owner, or both to the owner if there is no legal owner of the vehicle." Cal.Veh.Code § 4450.

8. The Code provides: "If any certificate of ownership is stolen, lost, mutilated or illegible, the legal owner … shall immediately make application for and may, upon the applicant furnishing information satisfactory to the department, obtain a duplicate." Cal.Veh.Code § 4459.

the Declaration of Madeline Rule, an employee of the DMV. I do not pause here to examine whether California could, consistent with due process, define a document which is not a certificate of title as a title document and thus make it a security for purposes of the federal criminal law. The reason I do not do so is because the contention that under California law the application is the functional equivalent of title is subject to significant doubt.

I begin by noting that there is nothing before the court relative to the legal effect, if any, of the DMV Manual. Even assuming that it is authoritative, the manual itself identifies at least one set of circumstances in which an application for duplicate title is not to be treated as the equivalent of title itself.[9] More to the point, whatever the present administrative procedure, the Vehicle Code provides for a distinction in the handling of transfers of ownership between endorsed pink slips and applications for duplicate title which elucidates their disparate character.

Where an owner possesses a pink slip, transfer of title is accomplished by "proper endorsement and delivery of the certificate of ownership" to the department along with the appropriate fees. Cal.Veh.Code § 5600. No further inquiry by the department appears to be authorized. On the other hand, when the certificate of title is missing, the transferor signs the application for duplicate title, which is forwarded to the department with the appropriate fees, Cal.Veh.Code § 5752, and upon receipt,

> [T]he department may ... examine into the circumstances of the case and may require the filing of certifications or other information, and when the department is satisfied that the applicant is entitled to a transfer ... the department may ... issue a new certificate of ownership....

Cal.Veh.Code § 5911. Given the legislature's different treatment of certificates of title and applications for duplicate title, the Government's contention that the latter is the equivalent of the former cannot lie.

The plain meaning analysis undertaken above demonstrates that the document in issue does not fall within the parameters of the statute and the defendants' motion should be granted. The Supreme Court has explained, however, that construction of the instant statute requires consideration of its "language and structure, legislative history and motivating policies." *Moskal*, 498 U.S. at 108, 111 S.Ct. at 465. I now proceed to that examination; doing so, however, in light of another of Chief Justice Marshall's admonitions in *Wiltberger* that "[t]he case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest." *Wiltberger*, 18 U.S. (5 Wheat.) at 96.

■ Above, I examined the meaning of the statute as measured by ordinary usage. Such a limited examination may be inappropriate, however, since the meaning of the term "securities" has an extended legal history. As has been observed, "when a statute employs a term with a specialized legal meaning relevant to the matter at hand, that meaning governs." *Moskal*, 498 U.S. at 121, 111 S.Ct. at 472 (Scalia, J., dissenting).

The legal meaning of security is, in large part, derived from various federal statutes regulating their sale. These statutes employ very broad definitions of the term. *See, e.g.,* section 2(1) of the Securities Act of 1933.[10]

---

**9.** The Manual provides, "Frequently auto auctions will not accept an application which contains an Application for Duplicate Title (Reg. 227). In this case, only dealers may request a Certificate of Title in the dealership name for inventory vehicles sold to an auto auction." DMV Manual § 6.115.

**10.** 15 U.S.C.A. § 77b(1) provides: "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'securi-

Whatever else may be said about the disparate list of items contained in the Securities Act, they, like the list in section 2311, point to documents which purport to demonstrate an interest in property. Thus, the legal sense of the term "security," like its common meaning, would not seem to encompass applications for title.

The Government argues, however, that the broad legislative purpose in adopting section 2314 requires a broad construction of the term "security." Indeed, the Ninth Circuit has held that the broad scope of section 2311 reflected the legislative intent to include a wide variety of financial instruments which could be used to perpetuate the wide range of fraudulent activities covered by section 2314. *United States v. Taylor*, 802 F.2d 1108, 1114 (9th Cir.1986). This court, of course, accepts the circuit's teaching that a broad construction is required. The issue, however, is what are the parameters of the term however broad the construction? Assuredly, it cannot be that the construction is to be so broad as to encompass any document the Government chooses to call a security.

In like manner, the Government relies on the Supreme Court's teaching that, in adopting section 2314, Congress had a "'broad purpose' to curb the type of trafficking in fraudulent securities that often depends for its success on the exploitation of interstate commerce." *Moskal*, 498 U.S. at 110, 111 S.Ct. at 466. Reliance on this broad purpose, however, begs the question; recognizing that Congress had an intent to punish trafficking in fraudulent securities does not help resolve the question of what falls within the definition of a security.

Finally, the Government relies on *United States v. Zwego*, 657 F.2d 248 (10th Cir. 1981),[11] where indeed it was held that an application for a duplicate title was a security. As I now explain, I find *Zwego* unpersuasive and thus cannot follow it.

The *Zwego* court's rationale for its conclusion was that although an application was not in fact a title document, it was "clearly usable

as an intermediate step in obtaining the actual certificate of title," and thus, "has value to a forger since it enables the possessor to obtain a valid title which evidences ownership." *Id.* at 250. The *Zwego* court's argument simply proves too much. Thus, while it is clear that the stamp and envelope used to mail an application for a duplicate certificate of title is useful to the forger as an instrumentality for obtaining title, it defies logic to suggest that by virtue thereof the stamp and envelope are transmuted into a security.

I concluded above that the requirement that the Securities Act be given a broad construction does not resolve the question of whether an application for duplicate title is a security. I note, however, that in 1984, the statute was amended to add the phrase "valid or blank motor vehicle title" to the list of securities found in section 2311. Although neither party has addressed this amendment, the court now examines its legislative history to determine if it sheds light on the issue at bar. Unfortunately, it does not appear to do so.

The amendment to the Securities Act adding motor vehicle titles to section 2311 was part of the Motor Vehicle Theft Law Enforcement Act of 1984, Pub.L. No. 98–547. The Act was a comprehensive package of new criminal provisions and related additions to existing statutes designed to curb vehicle theft.

The House Report and other legislative history reveals that the primary concern was the proliferation of "chop shops" and the exportation of stolen vehicles and parts. *See* 1984 U.S.C.C.A.N. 4628 *et seq.* The central provisions imposed a requirement that vehicle manufacturers add identification numbers to major auto parts, and imposed criminal sanctions for dealing in cars or parts with altered numbers. The legislative history focuses almost exclusively on these provisions, which are set out in Title I of the Act. Titles II and III make related changes in existing law, which Congress deemed necessary in order to confront the auto theft problem comprehensively.

ty', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

11. The Ninth Circuit cited *Zwego* approvingly, but without discussion, in its actual title case. *See Daly*, 716 F.2d at 1508.

The amendment to the Securities Act, at section 2202, is the only provision which does not deal with altered identification numbers. It simply declares that 18 U.S.C. § 2311 is "amended in the fifth definition by inserting after 'voting-trust certificate' the following: 'valid or blank motor vehicle title.'" Unfortunately, this history provides little aid in resolving the issue at bar. While clearly Congress wished to insure that those who fraudulently traffic in automobile titles can be prosecuted federally, this purpose does not inform as to whether fraudulent applications for duplicate title should be treated as a security.

■ Although the history of the amendment may not be illuminating, its content is helpful. The well known canon of construction *inclusio unius, exclusio alterius* (the inclusion of one means the exclusion of others), *see, e.g., O'Melveny & Meyers v. Federal Deposit Insurance Corp.*, — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), suggests that Congress considered what kind of vehicle documents it wished to specifically recognize as securities, and included documents of title but not applications for documents of title.

■ In construing an ambiguous statute it is, of course, appropriate to employ conventional canons of construction. Two other principles of statutory construction, *noscitur a cociis* (words grouped in a list should be given a related meaning), *see, e.g., Dole v. United Steelworkers of America*, 494 U.S. 26, 36, 110 S.Ct. 929, 934–35, 108 L.Ed.2d 23 (1990), and *ejusdem generis* (general words following enumeration of a class will be construed as applying only to members of the same general class), *see, e.g., Breininger v. Sheet Metal Workers*, 493 U.S. 67, 91–92, 110 S.Ct. 424, 438–39, 107 L.Ed.2d 388 (1989), also suggest that it is appropriate to limit the meaning of the term securities in section 2314 to items like those listed in section 2311, i.e., those purporting to demonstrate an interest. The force of these canons is weakened by the fact that by its terms that statute is illustrative; nonetheless, what it seeks to illustrate is the kinds of documents which constitute securities, the issue which must be resolved here. Moreover, as I now explain,

another canon of construction's full weight counsels against construing the statute to reach applications for duplicate title.

■ I noted above that retrospective construction of a statute to reach conduct not fairly encompassed by the text would raise problems of due process. I need not resolve the issue of whether the Government's proposed construction of section 2314 would actually violate the principles enunciated in *Bouie*. Rather, I apply "'a cardinal principle that [the] Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978) (citation omitted). Such a construction is readily at hand. To avoid any question of an unconstitutional retrospective construction, I need simply determine that the definition of the term "securities" as used in section 2314 encompasses only the ordinary and traditional legal meaning; that is, a document which signifies an interest in property. Under such a definition, an application for duplicate title is not a security, and thus the defendants' motion must be granted.

For the reasons set forth above, defendants' motion to dismiss Counts Two through Eleven is GRANTED.

IT IS SO ORDERED.